ELECTRIC SUPPLY CO. OF DURHAM, INC. v. SWAIN ELECTRICAL CO., INC., DAVIDSON AND JONES CONSTRUCTION COMPANY, AND WINSTONS VENTURE I, A NORTH CAROLINA PARTNERSHIP

No. 181PA90

(Filed 2 May 1991)

1. **Laborers' and Materialmen's Liens § 3 (NCI3d)— tiered subcontractors—subrogation to contractor's real property lien**

    In light of the plain language of the statutory provisions, their structure, and the policy sought to be achieved by the legislature, N.C.G.S. § 44A-23 provides first, second and third tier subcontractors a separate right of subrogation to the contractor's lien on the real property distinct from the lien on funds contained in N.C.G.S. § 44A-18.

    **Am Jur 2d, Mechanics' Liens §§ 17-25, 67, 70, 263 et seq.**

2. **Statutes § 5.6 (NCI3d)— legislative intent—legislative committee records—commentaries in General Statutes**

    In determining legislative intent, the appellate court does not look to the record of the internal deliberations of committees of the legislature considering proposed legislation. Even commentaries printed with the General Statutes, which were not enacted into law by the legislature, are not treated as binding authority.

    **Am Jur 2d, Mechanics' Liens §§ 17-25; Statutes §§ 169 et seq.**

ELECTRIC SUPPLY CO. v. SWAIN ELECTRICAL CO.

[328 N.C. 651 (1991)]

**3. Laborers' and Materialmen's Liens § 3 (NCI3d) — subcontractor — subrogation to contractor's real property lien**

A subcontractor may assert whatever lien the contractor who dealt with the owner has against the owner's real property relating to the project. Therefore, even if the owner has specifically paid the contractor for the labor or the materials supplied by the specific unpaid subcontractor who is claiming the lien, that subcontractor retains a right of subrogation, to the extent of his claim, to whatever lien rights the contractor otherwise has in the project. However, until the subcontractor commences the action, the contractor may prejudice the subcontractor's rights through waiver of the lien or acceptance of payment.

**Am Jur 2d, Mechanics' Liens §§ 67, 70, 263 et seq., 296.**

Justice MARTIN dissenting.

Justice WEBB joins in this dissenting opinion.

ON discretionary review of a decision of the Court of Appeals, 97 N.C. App. 479, 389 S.E.2d 128 (1990), reversing a judgment entered by *Battle, J.,* in the Superior Court, DURHAM County, on 23 February 1989, declaring that the plaintiff had no claim against defendants by way of lien or subrogation and remanding the case to the trial division. Heard in the Supreme Court 12 December 1990.

*Pulley, Watson, King & Hofler, P.A., by R. Hayes Hofler and Michael J. O'Foghludha, for plaintiff-appellee.*

*Manning, Fulton & Skinner, by John I. Mabe, Jr., for defendant-appellants Davidson and Jones Const. Co. and Winstons Venture I.*

*Johnston, Taylor, Allison & Hord, by James W. Allison and Greg C. Ahlum, for Carolinas AGC, Inc., amicus curiae.*

*Weinstein & Sturges, P.A., by L. Holmes Eleazer, Jr., and Fenton T. Erwin, Jr., for American Subcontractors Association, Inc., amicus curiae.*

MEYER, Justice.

In 1986, defendant-appellant Winstons Venture I (hereinafter the "Owner") hired defendant-appellant Davidson and Jones Con-

ELECTRIC SUPPLY CO. v. SWAIN ELECTRICAL CO.

[328 N.C. 651 (1991)]

struction Company (hereinafter the "Contractor") to build a Comfort Inn motel in Durham. The Contractor in turn hired Swain Electrical Co., Inc. (hereinafter the "First-tier Subcontractor"), to install electrical systems in the project. The First-tier Subcontractor subcontracted with the plaintiff-appellee, Electric Supply Co. of Durham, Inc. (hereinafter the "Second-tier Subcontractor"), to supply electrical materials for incorporation into the construction project. *See generally* N.C.G.S. § 44A-17 (1989) (statutory definitions).

Beginning 9 December 1986 and continuing through 5 May 1987, the Second-tier Subcontractor supplied materials to the First-tier Subcontractor valued at $20,718.11, for which no payment was ever received. Meanwhile, due to the First-tier Subcontractor's failure to perform its obligations with the Contractor, disputes arose between the Contractor and the First-tier Subcontractor. On 18 May 1987, having not received payment for the materials supplied, the Second-tier Subcontractor filed and served on all defendants a notice of claim of lien and a claim of lien in the amount of $20,718.11. *See* N.C.G.S. §§ 44A-12, -19 (1989). At that same time, the First-tier Subcontractor abandoned the job. The First-tier Subcontractor was owed no money by the Contractor for work related to the Comfort Inn project. In fact, the Contractor has a claim against the First-tier Subcontractor (who at the time of trial was under the jurisdiction of the United States Bankruptcy Court) for breach of contract.

Finally, on 2 October 1987, the plaintiff Second-tier Subcontractor commenced enforcement of its claim of lien by filing suit as required by statute within 180 days of the Contractor's[1] last furnishing of materials. *See* N.C.G.S. § 44A-13 (1989). Plaintiff filed this suit claiming any and all liens to which it is entitled under N.C.G.S. ch. 44A. On that same day, the Contractor posted a bond pursuant to N.C.G.S. § 44A-16(6), thereby canceling certain of plaintiff's liens.

The Contractor completed the project in late 1987 and sometime thereafter received a final payment from the Owner.

---

1. Since plaintiff's only viable claim is by way of subrogation to the Contractor's rights, it is the Contractor's actions which are the pertinent inquiry here. *See* N.C.G.S. § 44A-23 (1989). The record and briefs of the parties address only the dates materials were last furnished by the Second-tier Subcontractor. It can be assumed in this case that as long as the Second-tier Subcontractor was furnishing materials for the job, they were being furnished on behalf of the Contractor.

ELECTRIC SUPPLY CO. v. SWAIN ELECTRICAL CO.

[328 N.C. 651 (1991)]

The trial court held that the plaintiff Second-tier Subcontractor's lien was limited to amounts owed by the Contractor to the First-tier Subcontractor at the time the plaintiff filed its lien, effectively denying plaintiff any relief. The Court of Appeals reversed, holding that N.C.G.S. § 44A-23 provides first-, second-, and third-tier subcontractors a right of subrogation to the lien of the contractor who dealt with the owner, regardless of any lien on funds. We agree.

The matter under review is the proper statutory interpretation of portions of article 2 of chapter 44A of the North Carolina General Statutes entitled "Statutory Liens on Real Property." The relevant statutory provisions at issue are N.C.G.S. §§ 44A-18 and -23.

N.C.G.S. § 44A-18 provides:

**§ 44A-18. Grant of lien; subrogation; perfection.**

. . . .

(2) A second tier subcontractor who furnished labor or materials at the site of the improvement shall be *entitled to a lien upon funds* which are owed to the first tier subcontractor with whom the second tier subcontractor dealt and which arise out of the improvement on which the second tier subcontractor worked or furnished materials. A second tier subcontractor, to the extent of his lien provided in this subdivision, shall also be entitled to be subrogated to the lien of the first tier subcontractor with whom he dealt provided for in subdivision (1) and shall be entitled to perfect it by notice to the extent of his claim.

N.C.G.S. § 44A-18(2) (1989) (emphasis added). Since nothing was owed to the First-tier Subcontractor at or after the time that the Second-tier Subcontractor filed its lien claim, it is undisputed that, on the facts here, the Second-tier Subcontractor has no lien rights upon funds under N.C.G.S. § 44A-18.

N.C.G.S. § 44A-23 provides:

**§ 44A-23. Contractor's lien; subrogation rights of subcontractor.**

A first, second or third tier subcontractor, who gives notice as provided in this Article, may, *to the extent of his claim, enforce the lien of the contractor* created by Part 1 of Article

2 of this Chapter. The manner of such enforcement shall be as provided by G.S. 44A-7 through 44A-16. The lien is perfected as of the time set forth in G.S. 44A-10 upon filing of claim of lien pursuant to G.S. 44A-12. Upon the filing of the notice and claim of lien and the commencement of the action, no action of the contractor shall be effective to prejudice the rights of the subcontractor without his written consent.

N.C.G.S. § 44A-23 (1989) (emphasis added).

I.

[1] The first issue that we must decide is whether the General Assembly, in adopting N.C.G.S. §§ 44A-17 to -23 in 1971, intended to carry forward in N.C.G.S. § 44A-23 the previously well-settled right of a subcontractor to a lien by subrogation to the lien rights of the contractor in the real property.[2] Again, it is undisputed that N.C.G.S. § 44A-18 granted a new lien right to the subcontractor on certain *funds* and provided the subcontractor a right of subrogation to the rights of the contractor in specific circumstances. *See* N.C.G.S. § 44A-18(2), (3), (6) (1989). After examining the entire statutory scheme, we hold that the legislative intent was to continue the subcontractor's separate right in N.C.G.S. § 44A-23 to a lien by subrogation to the contractor's lien on the real property created by N.C.G.S. § 44A-8 (the contractor's lien).

---

2. From 1880 until 1971, essentially the following statute was in effect:

> **§ 44-6. Lien given subcontractors, etc., on real estate.** — *All subcontractors and laborers* who are employed to furnish or who do furnish labor or material for the building, repairing or altering any house or other improvement on real estate, *have a lien on said house and real estate* for the amount of such labor done or material furnished, which lien shall be preferred to the mechanic's lien now provided by law, when notice thereof shall be given as hereinafter provided which may be enforced as other liens in this chapter and in chapter 44A, except where it is otherwise provided; *but the sum total of all the liens due subcontractors and materialmen shall not exceed the amount due the original contractor at the time of notice given.*

N.C.G.S. § 44-6 (Supp. 1969), *repealed by* 1971 N.C. Sess. Laws ch. 880, § 2 (effective 1 October 1971) (emphasis added).

This Court consistently construed this mandate to allow the subcontractor a right of subrogation to the lien of the contractor who dealt with the owner, regardless of whether funds were owed to the party with whom the subcontractor dealt. *Powder Co. v. Denton*, 176 N.C. 426, 432-33, 97 S.E. 372, 374-75 (1919); *Brick Co. v. Pulley*, 168 N.C. 371, 375, 84 S.E. 513, 514 (1915); *Powell v. Lumber Co.*, 168 N.C. 632, 638, 84 S.E. 1032, 1035 (1915); *see also Supply Co. v. Motor Lodge*, 277 N.C. 312, 316, 177 S.E.2d 392, 394 (1970).

ELECTRIC SUPPLY CO. v. SWAIN ELECTRICAL CO.

[328 N.C. 651 (1991)]

In matters of statutory construction, our primary task is to ensure that the purpose of the legislature, the legislative intent, is accomplished. *Hunt v. Reinsurance Facility*, 302 N.C. 274, 288, 275 S.E.2d 399, 405 (1981). Legislative purpose is first ascertained from the plain words of the statute. *See Burgess v. Your House of Raleigh*, 326 N.C. 205, 209, 388 S.E.2d 134, 136 (1990). Moreover, we are guided by the structure of the statute and certain canons of statutory construction. *See, e.g., Media, Inc. v. McDowell County*, 304 N.C. 427, 430-31, 284 S.E.2d 457, 461 (1981) ("statutes dealing with the same subject matter must be construed *in pari materia*"); *Builders, Inc. v. City of Winston-Salem*, 302 N.C. 550, 556, 276 S.E.2d 443, 447 (1981) ("It is presumed that the legislature intended each portion to be given full effect and did not intend any provision to be mere surplusage"). Courts also ascertain legislative intent from the policy objectives behind a statute's passage "and the consequences which would follow from a construction one way or another." *Campbell v. Church*, 298 N.C. 476, 484, 259 S.E.2d 558, 564 (1979). "A construction which operates to defeat or impair the object of the statute must be avoided if that can reasonably be done without violence to the legislative language." *State v. Hart*, 287 N.C. 76, 80, 213 S.E.2d 291, 295 (1975). An analysis utilizing the plain language of the statute and the canons of construction must be done in a manner which harmonizes with the underlying reason and purpose of the statute. *See In re Hardy*, 294 N.C. 90, 96, 240 S.E.2d 367, 372 (1978).

When, after analyzing the text, structure, and policy of the statute, we are still in doubt as to legislative intent, we also examine the history of the legislation in question. *See Cab Co. v. Charlotte,* 234 N.C. 572, 576, 68 S.E.2d 433, 436 (1951). Changes made by the legislature to statutory structure and language are indicative of a change in legislative intent and therefore provide some weight in our analysis. *Id. Amicus* for Carolinas AGC, Inc., urges this Court to consider an attachment to the minutes of a House Committee on Judiciary III meeting held on 11 June *1985* as evidence of the legislature's intent in *1971*. House Bill 1144, to which the minutes refer, is entitled "An Act to Clarify Filing Requirements for a Claim of Statutory Lien by a Subcontractor Dealing with One Other than the Owner of the Property." 1985 N.C. Sess. Laws ch. 702. A memorandum, written by the attorney who drafted the 1985 amendments to the statute contained in the bill, was attached to the minutes and may have been discussed

ELECTRIC SUPPLY CO. v. SWAIN ELECTRICAL CO.

[328 N.C. 651 (1991)]

in the meeting of the House Committee. The memorandum purports to describe the complete statutory scheme of N.C.G.S. §§ 44A-17 to -23 and suggests a legislative intent consistent with *amicus'* argument.

[2] In determining legislative intent, this Court does not look to the record of the internal deliberations of committees of the legislature considering proposed legislation. Indeed, we have declared affidavits of members of the legislature who adopted statutes in question not to be competent evidence of the purpose and intended construction of the legislation.

> While the cardinal principle of statutory construction is that the words of the statute must be given the meaning which will carry out the intent of the Legislature, that intent must be found from the language of the act, its legislative history and the circumstances surrounding its adoption which throw light upon the evil sought to be remedied. Testimony, even by members of the Legislature which adopted the statute, as to its purpose and the construction intended to be given by the Legislature to its terms, is not competent evidence upon which the court can make its determination as to the meaning of the statutory provision.

*Milk Commission v. Food Stores*, 270 N.C. 323, 332-33, 154 S.E.2d 548, 555 (1967).

Even the commentaries printed with the North Carolina General Statutes, which were not enacted into law by the General Assembly, are not treated as binding authority by this Court. *See State v. Hosey*, 318 N.C. 330, 337-38 n.2, 348 S.E.2d 805, 809-10 n.2 (1986); *State v. Kim*, 318 N.C. 614, 620 n.3, 350 S.E.2d 347, 351 n.3 (1986). Even if we were willing to consider the attachment to the legislative committee proceedings in question, and we are not, we would be unpersuaded that the memorandum, submitted nearly fourteen years after the passage of the statute under review, would be sufficiently persuasive to overturn what, prior to 1971, was a well-settled right of the subcontractor of subrogation to the contractor's lien.

Plaintiff argues that a plain reading of the language of N.C.G.S. § 44A-23 creates a separate lien for tiered subcontractors on the real property by way of subrogation. One must focus on the language of the statute which indicates that the tiered subcontractor "may, *to the extent of his claim, enforce the lien of the contractor* created

by Part 1 of Article 2 of this Chapter." N.C.G.S. § 44A-23 (1989) (emphasis added).

Defendants and *amicus* Carolinas AGC, Inc., contend that the language "to the extent of his claim" does not create an alternate lien on the real property in favor of the tiered subcontractor, but rather, "the extent of [the subcontractor's] claim" means the extent of the subcontractor's lien *against funds*, as provided for by N.C.G.S. § 44A-18. Defendants essentially argue that had the legislature intended a separate lien by subrogation in N.C.G.S. § 44A-23, it would have said so explicitly.

The plain reading of the statute is not dispositive, and we therefore turn to an analysis of the structure of the statute to ascertain legislative intent. Plaintiff notes that N.C.G.S. §§ 44A-18 and 44A-23 were both grouped by the legislature under article 2, part 2 of chapter 44A. Part 2 is entitled "Liens of Mechanics, Laborers and Materialmen Dealing with One Other Than Owner." Plaintiff argues that such a statutory structure evinces a legislative intent that N.C.G.S. §§ 44A-18 and 44A-23 create *separate* liens available to certain tiered subcontractors.

In construing the statutory provisions *in pari materia*, defendants and *amicus* make a number of compelling arguments. Essentially, defendants' position is that the legislature intended the "to the extent of his claim" language of N.C.G.S. § 44A-23 to be dependent upon the existence of a lien on *funds* created in N.C.G.S. § 44A-18. First, they point out that a subcontractor's right of subrogation is expressly articulated only in N.C.G.S. § 44A-18 and note that N.C.G.S. § 44A-18(6) refers to N.C.G.S. § 44A-23 when it provides: "The subrogation rights of a first, second, or third tier subcontractor to the lien of the contractor created by Part 1 of Article 2 of this Chapter are perfected as provided in G.S. 44A-23." Defendants' and *amicus*' argument is that N.C.G.S. § 44A-23 only established a *means to perfect the lien* created in N.C.G.S. § 44A-18. Defendants infer significance from the legislature's use of the language "entitle[ment] to a lien" in section 44A-18(2) and contrast it with the language "to the extent of his claim" in section 44A-23. We note further that the legislature used the phrase "extent of his claim" in N.C.G.S. § 44A-18(2) and (3) to describe the subcontractor's lien by subrogation to the rights of parties ahead of it. In that context, consistent with defendants' interpretation of N.C.G.S. § 44A-23, the extent of the claim was restricted to the subcontrac-

tor's lien on funds. However persuasive, the arguments are not decisive here, and we now turn to an analysis of policy objectives.

In considering the policy objectives that the legislators sought to achieve in enacting the statute, we note that a constitutional mandate is directly on point. The North Carolina Constitution states:

> The General Assembly shall provide by proper legislation for giving to mechanics and laborers an adequate lien on the subject-matter of their labor.

N.C. Const. art. X, § 3. An adequate lien is intended to foster the construction industry, which operates largely on credit. Suppliers, including architects and surveyors, among many others, provide labor and materials to contractors and subcontractors who perform their portion of the work on a project. Since the contractor or subcontractor is generally not paid until the job, or a portion of it, is completed (and is probably unable to pay until it, in turn, is paid), their suppliers extend labor and materials to them on credit. An adequate lien is necessary to encourage responsible extensions of credit, which are necessary to the health of the construction industry. *See, e.g., Carolina Builders Corp. v. Howard-Veasey Homes, Inc.*, 72 N.C. App. 224, 229, 324 S.E.2d 626, 629, *cert. denied*, 313 N.C. 597, 330 S.E.2d 606 (1985); *Miller v. Lemon Tree Inn*, 39 N.C. App. 133, 140, 249 S.E.2d 836, 841 (1978).

Plaintiff argues that defendants' construction of the statute would abrogate the purpose of the constitutional mandate requiring an "adequate lien." We note that the constitutional mandate specifically refers to a lien on the *"subject-matter* of [the subcontractor's] labor" (emphasis added) and contrast it with defendants' interpretation of legislative intent, which creates a lien system based largely on *funds*. Moreover, plaintiff contends that the General Assembly enacted N.C.G.S. § 44A-18 to provide *additional* protection to subcontractors by establishing a lien on funds for a subcontractor, *even if the contractor had specifically agreed with the owner not to place any lien on the owner's property*, thereby circumventing the lien created by N.C.G.S. § 44A-23. *See, e.g., Con Co. v. Wilson Acres Apts.*, 56 N.C. App. 661, 663, 289 S.E.2d 633, 635, *cert. denied*, 306 N.C. 382, 294 S.E.2d 206 (1982); *Mace v. Construction Corp.*, 48 N.C. App. 297, 303-04, 269 S.E.2d 191, 194-95 (1980).

Defendants and *amicus* point out that while the owner's property is subject to sale in a lien enforcement under N.C.G.S.

ELECTRIC SUPPLY CO. v. SWAIN ELECTRICAL CO.

[328 N.C. 651 (1991)]

§ 44A-23, construction contracts, as a standard practice, call for the contractor who deals directly with the owner to indemnify the owner. This means that, as a practical matter, such contractor essentially bears the economic burden that arises when the first-tier subcontractor abandons the project while owing monies to lower-tiered subcontractors. They further argue that if such contractors required their first-tier subcontractors to post payment bonds, the costs of construction would rise and small subcontractors would be driven from the industry.

Plaintiff and *amicus* American Subcontractors Association, Inc., respond that the burden of a defaulting first-tier subcontractor is better borne by the contractor who hired it. Moreover, by exercising greater supervisory responsibility over the first-tier subcontractor, the contractor who dealt directly with the owner can avert or at least minimize losses. If such contractor requires additional assurances, he can require payment bonds. *See* N.C.G.S. § 44A-26 (1989). Together, plaintiff and *amicus* note that better supervision by such contractors and the relatively infrequent occurrence of a first-tier subcontractor becoming insolvent during construction will minimize the need for payment bonds, which concededly increase the costs of construction. In addition, we note that the use of lien waivers, used other than in anticipation of and in consideration for the awarding of a contract, may also minimize liability by contractors who deal with the owner. *See* N.C.G.S. § 44A-12(f) (1989).

We hold that, in light of the plain language of the statutory provisions, their structure, and more importantly, the policy sought to be achieved by the legislature, N.C.G.S. § 44A-23 provides first-, second-, and third-tier subcontractors a separate right of subrogation to the lien of the contractor who deals with the owner, distinct from the rights contained in N.C.G.S. § 44A-18.

II.

[3] Having established that the subcontractor has a separate lien right by way of subrogation to the contractor's lien on the real estate, we must next examine the extent of the lien that plaintiff asserts. The contractor's lien is described in N.C.G.S. § 44A-8, found in part 1 of article 2, entitled "Liens of Mechanics, Laborers and Materialmen *Dealing with Owner*." (Emphasis added.) It provides:

ELECTRIC SUPPLY CO. v. SWAIN ELECTRICAL CO.

[328 N.C. 651 (1991)]

### § 44A-8. Mechanics', laborers' and materialmen's lien; persons entitled to lien.

Any person who performs or furnishes labor or professional design or surveying services or furnishes materials pursuant to a contract, either express or implied, with the owner of real property for the making of an improvement thereon shall, upon complying with the provisions of this Article, have *a lien on such real property to secure payment of all debts owing for labor done or professional design or surveying services or material furnished pursuant to such contract.*

N.C.G.S. § 44A-8 (1989) (emphasis added).

In construing the subcontractor's subrogated interest to the contractor's lien, we first hold that, in light of the policy behind the passage of N.C.G.S. § 44A-23, the subcontractor may assert whatever lien that the contractor who dealt with the owner has against the owner's real property relating to the project. *See Powell v. Lumber Co.*, 168 N.C. 632, 638, 84 S.E. 1032, 1035 (1915). Therefore, even if the owner has specifically paid the contractor for the labor or materials supplied by the specific unpaid subcontractor who is claiming the lien, that subcontractor retains a right of subrogation, to the extent of his claim, to whatever lien rights the contractor otherwise has in the project. However, N.C.G.S. § 44A-23 also provides that:

Upon the filing of the notice and claim of lien and the commencement of the action [by the subcontractor], no action of the contractor shall be effective to prejudice the rights of the subcontractor without his written consent.

N.C.G.S. § 44A-23 (1989). As a result, until the subcontractor commences the action, the clear statutory language indicates that the contractor may prejudice the subcontractor's rights through waiver of the lien or acceptance of payment. *See Mace v. Construction Corp.*, 48 N.C. App. 297, 303, 269 S.E.2d 191, 195; *see generally* Urban & Miles, *Mechanics' Liens for the Improvement of Real Property: Recent Developments in Perfection, Enforcement and Priority*, 12 Wake Forest L. Rev. 283, 376 (1976).

In conclusion, we note that plaintiff has not established a lien on *funds* paid by the Owner to the Contractor. A lien on the *real property* by way of subrogation may or may not exist, depending upon the timing of the Owner's final payment to the Contractor

ELECTRIC SUPPLY CO. v. SWAIN ELECTRICAL CO.

[328 N.C. 651 (1991)]

relative to the commencement of this action. The record is unclear as to the timing of this final payment. We therefore affirm the decision of the Court of Appeals and remand to that court for further remand to the Superior Court, Durham County, for a determination of this issue and a full determination of this case consistent with this opinion.

Affirmed.

Justice MARTIN dissenting.

I respectfully dissent from the majority opinion. The question to be decided is whether a second tier subcontractor is entitled to perfect a lien against the owner of real property under N.C.G.S. § 44A-23 when both the owner and the general contractor, prior to receiving the second tier subcontractor's notice of claim of lien, have fully discharged all of their obligations to the first tier subcontractor, including payment of debts due for labor and the materials furnished by the second tier subcontractor. The majority has allowed such a lien; in so doing, the majority has erred.

Mechanics' liens on real property in this State are governed by Article 2 of Chapter 44A of the General Statutes. There are two categories. The first concerns those liens arising from claims based upon direct dealing between the owner of the property and the party claiming the lien. The second concerns the claims of lien by parties who did not deal directly with the owner of the real property. The instant appeal is concerned with the rights of a second tier subcontractor who did not deal directly with the owner, but contracted solely with a first tier subcontractor.

Fundamental to a subcontractor's right to a lien is whether he has given timely written notice of a claim of lien directly to the owner of the real property, to the general contractor, and to any subcontractor superior to him in the chain of construction. N.C.G.S. §§ 44A-18, -19, -20, and -23 (1989). This actual written notice is the cornerstone of a subcontractor's lien rights. Until the owner receives notice of a claim of lien from a subcontractor, the owner is free to disburse funds to the general contractor. Likewise, until the general contractor receives notice of a claim of lien from a subcontractor of a given tier, he is free to disburse funds to higher tiered subcontractors. If a notice of claim of lien is provided by a subcontractor, and the owner, contractor, or higher

tiered subcontractor ignores the notice of claim of lien, that obligor must pay twice for the same material or labor, once to the party to whom he paid funds after receiving the notice and again to the unpaid subcontractor lien claimant.

Thus, it is clear that the purpose of the adoption of Chapter 44A of the General Statutes was to establish a tiered lien system for subcontractors, thereby limiting a subcontractor's lien rights to those of the parties above him. If, at the time the owner receives notice of the second tier subcontractor's lien claim the owner no longer owes any funds to the general contractor, then no funds are in the possession of the owner to which such subcontractor's lien can attach. The subcontractor's lien rights are limited to the rights of the parties above him. *See Mace v. Construction Corp.*, 48 N.C. App. 297, 269 S.E.2d 191 (1980); *Builders Supply v. Bedros*, 32 N.C. App. 209, 231 S.E.2d 199 (1977).

However, if a second tier subcontractor has a lien upon funds owed by the owner to the general contractor, the second tier subcontractor is also entitled to a lien upon the owner's real property to the extent of his lien. If the owner pays the general contractor after the owner receives the second tier subcontractor's notice of claim against the funds, the owner may also be required to pay the subcontractor. N.C.G.S. § 44A-20 (1989).

In some circumstances, a first, second, or third tier subcontractor may also be entitled to a lien against the real property of the owner by subrogation if the owner refuses to pay for the labor and materials furnished by the subcontractor. N.C.G.S. § 44A-23 instructs how such subcontractor may by subrogation perfect the lien rights of the general contractor against the owner's real property should an owner become insolvent or refuse to pay the general contractor. In order to perfect such a lien against the property of the owner the subcontractor must have established a lien upon the funds owed by the owner to the general contractor. Then, he must (a) perfect his subrogated lien against the owner's real property by serving upon all persons above him in the construction chain his notice of claim of lien against the funds, (b) file with the appropriate clerk of the superior court a claim of lien against the real property along with a notice of his claim of lien against the funds, and (c) commence a lien enforcement lawsuit. *See* N.C.G.S. § 44A-23 (1989). Like all liens created by Part 2 of Article 2 of Chapter 44A, the subcontractor's subrogation to

ELECTRIC SUPPLY CO. v. SWAIN ELECTRICAL CO.

[328 N.C. 651 (1991)]

the general contractor's lien rights against the land of the owner is dependent upon the existence of an underlying claim of lien upon the funds owed to the party above him and with whom he contracted. This is apparent from the plain meaning of N.C.G.S. § 44A-23 wherein it is stated that "[a] first, second or third tier subcontractor, who gives notice as provided in this Article, may, to the extent of his claim, enforce the lien of the contractor . . . ." N.C.G.S. § 44A-23 (1989). The manner of such enforcement is detailed in the section. The key to establishing the claim is the phrase "to the extent of his claim." *Id.* In the instant case, the second tier subcontractor was unable to establish any claim upon the funds of the first tier subcontractor because there were no funds available for that purpose.

Even if it is assumed that N.C.G.S. § 44A-23 on its face is not clear, any reasonable interpretation of the statute discloses that it is necessary for the second tier subcontractor to establish its claim on funds before he can establish a lien on the owner's real property by subrogation.

It is an accepted method of determining the intent of the legislature to examine any legislative history available concerning the legislation in question. *See, e.g., Burgess v. Your House of Raleigh, Inc.*, 326 N.C. 205, 209, 388 S.E.2d 134, 136-37 (1990) (Meyer, J.); *Hunt v. Reinsurance Facility*, 302 N.C. 274, 295, 275 S.E.2d 399, 409-10 (1981) ("We find especially pertinent, in considering the intent of our Legislature, this statement [of the North Carolina Legislative Research Commission *Report to the 1979 General Assembly of North Carolina, Insurance Laws*, at 12-13] to the 1979 General Assembly commenting on the 1977 insurance law amendments: . . ."); *Greene v. Town of Valdese*, 306 N.C. 79, 83-84, 291 S.E.2d 630, 633 (1982) (relying upon *Report of the Municipal Government Study Commission* to determine legislative intent behind statutory scheme recommended by the *Report* and subsequently adopted by the Legislature). *Cf. generally* Stafford, "North Carolina Legislative History," 38 *N.C. State Bar Quarterly* 22 (Winter 1991).

The legislative history of N.C.G.S. § 44A-23 discloses that in 1985 the General Assembly ratified an amendment to the lien law contained in House Bill 1144. *An Act to Clarify Filing Requirements for a Claim of Statutory Lien By a Subcontractor Dealing With One Other than the Owner of the Property*, 1985 N.C. Sess. Laws ch. 702. This session law was later codified, in pertinent part, in

N.C.G.S. § 44A-23. In a hearing on this bill before the Judiciary III Committee, Representative Boyd explained that the bill clarified the method of filing a notice of claim of lien for a subcontractor, and then recognized Martha Harris, a staff attorney for the North Carolina Legislative Services Office, who had drafted the bill, and who was present to explain the bill further. *Minutes, North Carolina House Committee on Judiciary III dated June 11, 1985* ("Rep. Boyd recognized Martha Harris who had drafted [House Bill 1144] to explain it further. A copy of this explanation is attached."). Ms. Harris spoke to the committee and filed with it a written explanation of the bill. The pertinent parts of this memo read:

RE: House Bill 1144

Note: This discussion focuses on three parties: the landowner, the contractor with whom he dealt, and the subcontractor who dealt with the contractor. The rules that apply to the subcontractor will apply, with some procedural complications, to second and third tier subcontractors as well.

House Bill 1144 clarifies the effect of a subcontractor's filing a notice of a claim of lien against a property owner with whom he has not dealt directly. Under current law, a subcontractor can perfect a lien against the owner's real property at any time, even before the work has been done or after the owner has paid the debt in full. The bill provides that, like a contractor who has dealt directly with the property owner, a subcontractor may not perfect a lien against the property unless the owner owes money for the work performed.

. . .

Part 2 of Article 2 of Chapter 44A creates several different types of liens in favor of subcontractors who have not dealt with the owner of the property. First, a subcontractor has a lien on funds owed by the contractor with whom he dealt for the improvement on which the subcontractor worked. This lien is perfected by giving notice of the lien to the landowner who owes or will owe the funds to the contractor with whom the subcontractor dealt. This notice may be filed at any time whether or not payment of the funds is yet due.

The subcontractor may enforce this lien on funds by enforcing the lien of the contractor who dealt directly with the owner against the property. Thus, the lien of the subcontractor against

funds owed to the contractor creates a second lien, against the owner's property. Unlike the lien in favor of the contractor, however, this lien can be perfected at any time whether or not the work has been performed and whether or not the owner owes anything for the work. By filing the notice of lien, the subcontractor can create a cloud on the owner's title at any time. In practice, many subcontractors file this notice whenever they begin work on a new project.

House Bill 1144 would provide that the notice of lien filed by the subcontractor perfects the subcontractor's lien against any funds owed to the contractor but does not perfect a lien against the landowner's property. A subcontractor could only perfect the lien against the owner's property in the same way as a contractor: by filing a claim of lien after the owner's obligation to the contractor become mature. The lien would then relate back to the time the subcontractor first furnished labor or materials at the site.

*Memorandum dated May 28, 1985 To Representative Boyd from Martha Harris, Staff Attorney Re: House Bill 1144.*

It is to be noted that the above legislative history is related to the 1985 amendments to N.C.G.S. §§ 44A-19, -20, -18(b), and -23. The amendment to section 23 reads:

Sec. 4. G.S. 44A-23 is amended by adding after the second sentence of that section a new sentence to read: "The lien is perfected as of the time set forth in G.S. 44A-10 upon filing of claim of lien pursuant to G.S. 44A-12."

1985 N.C. Sess. Laws ch. 702, § 4.

So it is clear that the above legislative history explained the legislative intent as to the meaning of section 23, and other parts of the lien statute, as amended by the 1985 legislature, not the meaning of section 23 as of 1971 as argued by the majority. The statute under review is not the 1971 version of N.C.G.S. § 44A-23, but the 1985 amended statute. The legislative history above stated is most relevant in determining the intent of the legislature. *Milk Commission v. Food Stores*, 270 N.C. 323, 154 S.E.2d 548 (1967).

This legislative history clearly demonstrates that N.C.G.S. § 44A-23 requires that a subcontractor perfect his claim of lien against the funds due the person with whom he contracted before

he can establish a lien by subrogation against the real property of the owner. If the majority's interpretation of N.C.G.S. § 44A-23 were correct, there would be no logical need for the tiered lien system contained in Chapter 44A.

The correct interpretation of N.C.G.S. § 44A-23 is also supported by case law reported since the adoption of the present tiered lien scheme in 1971. In *Builders Supply v. Bedros*, 32 N.C. App. 209, 231 S.E.2d 199, the Court of Appeals held that if the general contractor had been paid or had released its claim of lien before its subcontractor asserted a lien on funds owed to the general contractor there was nothing for the subcontractor to place a lien on, and no lien could be established against the land of the owner by the subcontractor. *Mace v. Construction Corp.*, 48 N.C. App. 297, 269 S.E.2d 191, holds that where a general contractor had expressly waived its right to claim a lien, the subcontractor had no right to a lien on the real property of the owner pursuant to N.C.G.S. § 44A-23. *But cf.* N.C.G.S. § 44A-12(f) (1989).

Public policy dictates that the party who has the ability to protect himself from loss should do so, and if he fails to so act in his own behalf it is not appropriate to require an innocent party to pay twice in order to make the negligent party whole. So here, where the second tier subcontractor fails to properly file his claim of lien against funds owed to the first tier subcontractor or the general contractor it would be inequitable to require the owner or the general contractor to again pay the amount claimed by the plaintiff, that sum having already been paid to the defaulting first tier subcontractor. Plaintiff here delayed some five months, from December until May, before giving notice of its unpaid claim. The law as well as equity protects the general contractor and owner in this instance and does not require either to again pay in order to benefit the negligent second tier subcontractor.

For these reasons, the majority opinion erred in allowing the second tier subcontractor to perfect a lien against the owner when the second tier subcontractor had not complied with N.C.G.S. § 44A-18 and had failed to file notice of its claim against funds in a timely fashion to protect its own interest. In short, the majority has simply amended the statute to allow the plaintiff to recover in this instance. This creates both confusion and error in the law, works an inequity upon the landowner and general contractor in

this case, and establishes a rule of law that will be injurious to contractors and the construction industry generally in North Carolina.

Justice WEBB joins in this dissenting opinion.