GREENE CITIZENS FOR RESPONSIBLE GROWTH, INC., HENRY GREY FIELDS, JR., DOYLE R. FOSSO, EDWIN B. JONES, JOHN LINDSEY, WILLIAM H. LEWIS, JR., FRANKLIN P. HARRIS, GEORGE F. WARREN, WALLACE TILGHMAN, AND LINDA FIELDS, Plaintiffs v. GREENE COUNTY BOARD OF COMMISSIONERS, Defendant and ADDINGTON ENVIRONMENTAL, INC., (NOW REPUBLIC SERVICES OF NORTH CAROLINA, LLC), Intervenor

No. COA99-1467

(Filed 5 June 2001)

**Eminent Domain— condemnation for landfill—alternative sites**

The trial court erred by granting summary judgment on the issue of the condemnation of a site for a sanitary landfill in favor of defendant board of commissioners and intervenor waste disposal company, because: (1) N.C.G.S. § 153A-136(c) requires a board of commissioners to give careful and thorough consideration to alternative sites for a landfill within the county; and (2) the record is unclear as to whether the board considered alternative sites.

Appeal by plaintiffs from judgment entered 2 June 1999 by Judge W. Russell Duke, Jr. in Greene County Superior Court. Heard in the Court of Appeals 14 February 2001.

*Fuller, Becton, Slifkin & Bell, by James C. Fuller; and James F. Hopf and Catherine W. Cralle, for plaintiffs-appellants.*

*Baddour, Parker, Hine & Orander, P.C., by E. B. Borden Parker and Philip A. Baddour, Jr., for defendant-appellee.*

*Parker, Poe, Adams & Bernstein L.L.P., by Jack L. Cozort and John J. Butler, for intervenor-appellee.*

*John D. Runkle for amicus curiae Conservation Council of North Carolina, Inc., Blue Ridge Environmental Defense League, Inc., and North Carolina Environmental Justice Network.*

WALKER, Judge.

Plaintiffs initiated this action on 19 October 1998 seeking declaratory and injunctive relief to prevent defendant from proceeding with the development of a landfill in Greene County (County). Plaintiffs allege, in part, that the Greene County Board of Commissioners

(Board) failed to properly consider alternative sites for the landfill as required by N.C. Gen. Stat. § 153A-136(c) (1999). Intervenor Addington Environmental, Inc., now Republic Services of North Carolina, LLC (Republic), was granted leave to intervene on 28 October 1998. The trial court denied plaintiffs' motion for injunctive relief and thereafter granted summary judgment in favor of both the Board and Republic on 2 June 1999.

Plaintiffs' claims arise from the process undertaken by the Board to locate a site for a new landfill after Greene County was forced to close its existing landfill at the end of 1997. After the Board heard proposals from several private waste disposal companies, it signed a contract with Republic in August 1997 to create a landfill in the County. The contract required Republic to identify areas in the County suitable for the location of the landfill including "any and all potential development sites." On 29 December 1997, before the Board voted on the location of the landfill, Republic secured an option on a tract of land located adjacent to the existing landfill known as the Bridgers Tract.

On 20 April 1998, the Board received a site study from Republic which purported to analyze potential sites within the County. Part I of the study consisted of a "combined exclusionary map" which ruled out those areas where locating a landfill, according to Republic, would be imprudent based on ten factors: geological characteristics; hydro-geological characteristics; groundwater well proximity; socio-economic and demographic information; wetland proximity; proximity to highways and population centers; effects on endangered species, cultural resources or natural and historical preserves; availability of property; sufficiency of soil for cover; and airport safety. The study identified "exclusionary zones" created by the application of each of the aforementioned factors with the remaining areas in the County being suitable for a landfill site. Part II of the study contained a statement that "considered sites in the non-excluded area" would be evaluated. Although the "combined exclusionary map" showed other areas which were not excluded in the County, the only site evaluated in Part II of the study and presented to the Board was the Bridgers Tract.

In August 1998, Republic presented the Board with a facility plan which included socioeconomic and demographic information about the area surrounding the Bridgers Tract. This data was also made available to the public. On 2 September 1998, the Board published a legal notice in the local newspaper announcing a public hearing

would be held on 5 October 1998 at which the Board would "consider alternative sites and relevant socioeconomic and demographic data." At the meeting on 5 October 1998, the Board received extensive public comment, a report by Republic regarding the site selection process and additional socioeconomic and demographic data. Included in the presentation was the location of possible alternative sites considered by Republic; however, each of the possible alternative sites had been ruled out by Republic as being within, or partially within, an "exclusionary zone."

After the public hearing was closed, the Board voted to approve the Bridgers Tract as the site for the landfill, as submitted by Republic. Thereafter, on 2 November 1998, the Board met again and reaffirmed its decision to approve this site. The Board stated specifically that it "had [an] additional opportunity to consider alternative sites, whether or not to approve any site, and the socioeconomic and demographic data" and that it had "considered alternative sites." However, the record does not reflect whether any new or additional information regarding alternative sites was received by the Board since its 5 October 1998 meeting.

On appeal, plaintiffs assert that the trial court erroneously granted summary judgment in favor of the Board and Republic because the Board failed to properly consider alternative sites as required by N.C. Gen. Stat. § 153A-136(c) (1999).

Before approving a site for a new landfill that is within one mile of an existing landfill, N.C. Gen. Stat. § 153A-136(c) (1999) requires that:

> The board of commissioners of a county shall consider alternative sites and socioeconomic and demographic data and shall hold a public hearing prior to selecting or approving a site for a new sanitary landfill that receives residential solid waste that is located within one mile of an existing sanitary landfill within the State.

However, the statute does not offer guidance as to how a board of commissioners is to evaluate and consider alternative sites and the socioeconomic and demographic data associated with those sites.

Plaintiffs argue that Republic never intended to present alternative sites to the Board since the Bridgers Tract had been identified months before and an option had been secured on this tract. Plaintiffs

further assert that preliminary evaluations of this site had been completed in the Spring of 1998 and no other site was the subject of any such evaluation. In particular, plaintiffs emphasize that all of the alternative sites presented to the Board were within, or partially within, "exclusionary zones" and thus not alternatives as contemplated by the statute. As such, plaintiffs contend that the Board did not comply with the statutory mandate to "consider alternative sites."

Defendant counters the statute merely requires that alternative sites be considered and that interpreting the statute to require the Board to identify more than one site outside of the "exclusionary zones" which meets its criteria, based on the ten factors, would extend the scope of the statute beyond that intended by the legislature. Further, defendant asserts the Board examined other sites and the ultimate determination that only one site met all the criteria did not preclude meaningful consideration of alternative sites.

In interpreting N.C. Gen. Stat. § 153A-136(c) (1999), we must determine what the legislature intended by requiring a board of commissioners to "consider alternative sites." At the outset, we note that it is "an accepted rule of statutory construction that ordinarily words of a statute will be given their natural, approved, and recognized meaning." *Greensboro v. Smith*, 241 N.C. 363, 366, 85 S.E.2d 292, 294 (1955). Because the statute does not define the phrase "consider alternative sites," we must construe this phrase in accordance with its plain meaning to determine the legislative intent. *See Electric Supply Co. v. Swain Electrical Co.*, 328 N.C. 651, 656, 403 S.E.2d 291, 294 (1991). The plain meaning of "consider" is "to think carefully about" or "to look at thoughtfully." *The American Heritage College Dictionary* 297 (3rd ed. 1997). The plain meaning of "alternative" is stated as "allowing or necessitating a choice between two or more things." *The American Heritage College Dictionary* 40 (3rd ed. 1997).

This Court discussed consideration of "alternatives" in the context of the North Carolina Environmental Policy Act. *See Orange County v. Dept. of Transportation*, 46 N.C. App. 350, 265 S.E.2d 890 (1980). Specifically, we addressed Section 4 of the Act which requires that any State agency, here the Board of Transportation, "shall include in every recommendation or report . . . a detailed statement . . . setting forth the following: (d) Alternatives to the proposed action." N.C. Gen. Stat. § 113A-4 (1999). In *Orange County*, the plain-

tiffs alleged the State's environmental impact report filed in conjunction with a proposed highway project failed to exhibit that the Board of Transportation properly considered alternatives to the proposed route as required by environmental regulations. *Id.* at 383, 265 S.E.2d at 911. In particular, plaintiffs argued that two alternative routes presented were not true alternatives because they were going to be built regardless of whether the proposed route was built. *Id.* This Court held:

> The primary purpose of both the state and federal environmental statutes is to ensure that government agencies seriously consider the environmental effects of each of the reasonable and realistic alternatives available to them. The standards for the content and adequacy of the [Environmental Impact Study] are articulated in 1 N.C.A.C. § 25.0201 and 23 C.F.R. § 771.18. The courts have subjected such standards to a "Rule of Reason" and have not required highway officials to consider every one of the 'infinite variety' of 'unexplored and undiscovered alternatives' that inventive minds can suggest." *Fayetteville Area Chamber of Commerce v. Volpe,* 515 F.2d 1021, 1027 (4th Cir. 1975), *cert. denied,* 423 U.S. 912, 96 S.Ct. 216, 46 L. Ed. 2d 140 (1975) (holding that statutes requiring consideration of alternatives must be interpreted reasonably in light of limited resources).

*Id.* at 383, 265 S.E.2d at 911-12. In remanding the matter to the trial court for further determinations, this Court noted that it "does not sit as a trier of fact." *Id.*

In light of these principles, we construe N.C. Gen. Stat. § 153A-136(c) (1999) to require a board of commissioners to give careful and thorough consideration to alternative sites for a landfill within the County. Whether or not the Board met this requirement in the selection of the Bridgers Tract as the landfill site is a factual question not properly made by this Court.

The Board contends it is entitled to the presumption that it considered alternative sites. However, we are unable to conclude from the record before us that the Board considered alternative sites as required by the statute. Thus, we remand the case to the trial court for further proceedings consistent with this opinion.

In light of our disposition in this matter, we need not address the other issues raised in this appeal.

Reversed and remanded.

Judges BIGGS and SMITH concur.