An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-1109

Filed 20 May 2026

Wake County, No. 24CV003534-910

BEVERLEY BARD, RICHARD LEVY, SUSAN KING COPE, ALLEN WELLONS, LINDA MINOR, THOMAS W. ROSS, SR., MARIE GORDON, SARAH KATHERINE SCHULTZ, JOSEPH J. COCCIA, TIMOTHY S. EMERY, and JAMES G. ROWE, Plaintiffs,

v.

NORTH CAROLINA STATE BOARD OF ELECTIONS, ALAN HIRSCH, in his official capacity as Chair of the North Carolina State Board of Elections, JEFF CARMON III in his official capacity as Secretary of the North Carolina State Board of Elections, STACY FOUR EGGERS in his official capacity as a member of the North Carolina State Board of Elections, SIOBHAN O'DUFFY MILLEN in her official capacity as a member of the North Carolina State Board of Elections, KEVIN N. LEWIS in his official capacity as a member of the North Carolina State Board of Elections, PHILIP E. BERGER in his official capacity as President Pro Tem of the North Carolina Senate, and DESTIN HALL in his official capacity as Speaker of the North Carolina House of Representatives, Defendants.

Appeal by plaintiffs from order entered 27 June 2024 by Judges Jeffery B. Foster, Angela B. Puckett, and C. Ashley Gore in Wake County Superior Court. Cross-appeal by legislative defendants from order entered 27 June 2024 by Judges Jeffery B. Foster, Angela B. Puckett, and C. Ashley Gore in Wake County Superior Court. Heard in the Court of Appeals 13 August 2025.

> *Greene Wilson Crow & Smith, P.A., by Thomas Reston Wilson, for plaintiffs/cross-appellees.*

*Robert F. Orr, PLLC, by Robert F. Orr, for plaintiffs/cross-appellees.*

*Jackson Lewis PC, by Ann H. Smith, for plaintiffs/cross-appellees.*

*Andrew M. Simpson for plaintiffs/cross-appellees.*

*Nelson Mullins Riley & Scarborough, LLP, by Phillip J. Strach, Alyssa M. Riggins, and Cassie A. Holt, for legislative defendants/cross-appellants Philip E. Berger in his official capacity as President Pro Tem of the North Carolina Senate and Destin Hall in his official capacity as Speaker of the North Carolina House of Representatives.*

*Ellis & Winters LLP, by Jeffrey S. Warren, for Charles Thelen Plambeck, the Hon. Robin E. Hudson, and Joni L. Walser, amici curiae.*

*No brief filed for defendants North Carolina State Board of Elections, Alan Hirsch, Jeff Carmon, III, Stacy Four Eggers, Siobhan O'Duffy Millen, and Kevin N. Lewis.*

FREEMAN, Judge.

Plaintiffs appeal from order entered by a three-judge panel granting legislative defendants' motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6). Legislative defendants cross-appeal the order, arguing the panel erred by ordering each side to pay their own attorneys' fees. Plaintiffs move to dismiss legislative defendants' cross-appeal. After careful review, we dismiss the cross-appeal and affirm the judgment of the trial court.

## I.  Factual and Procedural Background

In October 2023, the North Carolina General Assembly enacted Senate Bill 757, Senate Bill 758, and House Bill 898. Together, this legislation determined each

congressional, state house of representatives, and state senate district pursuant to the decennial census.

On 31 January 2024, plaintiffs filed a complaint in Wake County Superior Court under Article I, Section 36 of the North Carolina Constitution, alleging that certain districts were drawn in a way that violated plaintiffs' unenumerated right to fair elections.[1]  Plaintiffs alleged that this right was violated by apportioning the challenged districts "intentionally to assure, to the extent possible, a political victory in the 2024 election for candidates of one political party, in this case, the Republican Party."

In response, legislative defendants filed a motion to dismiss under Rules 12(b)(1) and 12(b)(6), arguing that plaintiffs' claims were of partisan gerrymandering, and thus were barred by a recent decision of our Supreme Court, *Harper v. Hall*, 384 N.C. 292 (2023).  Legislative defendants further argued that partisan gerrymandering claims were nonjusticiable political questions, and that Article I, Section 36 did not limit the General Assembly's redistricting authority.

On 13 June 2024, a three-judge panel, assigned by the Honorable Chief Justice Paul Newby pursuant to N.C.G.S. § 1-267.1(b2), heard arguments about the

---

[1] At the time the lawsuit was filed, the Speaker of the House was Timothy K. Moore.  Plaintiffs also named the North Carolina State Board of Elections ("BOE") and its members in their official capacities as defendants.  The BOE defendants filed an answer on 12 March 2024.  On 22 July 2024, the trial court found that plaintiffs raised non-justiciable political questions and dismissed plaintiffs' claim against the BOE defendants with prejudice.  Therefore, there was final judgment as to all parties, but only the legislative defendants are subject to this appeal.

constitutionality of the challenged bills.  In its written order entered 27 June 2024, the panel concluded that this matter was "the same underlying issue that was addressed in *Harper*: the redrawing of districts from which representatives to the Legislature will be elected."  Because plaintiffs' claims were "non-justiciable political questions," the panel granted legislative defendants' motion to dismiss.  The panel taxed costs against plaintiffs and ordered each party to "pay their own attorney fees."

Plaintiffs timely appealed.  Legislative defendants subsequently gave notice of cross-appeal.

## II.     Jurisdiction

This Court has jurisdiction to review a final judgment of a superior court. N.C.G.S. § 7A-27(b)(1) (2025).  Accordingly, we have jurisdiction over plaintiffs' appeal of right.

## III.     Standard of Review

"We review Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction de novo and may consider matters outside the pleadings."  *Nation Ford Baptist Church Inc. v. Davis*, 382 N.C. 115, 121 (2022) (citation omitted).  "Appellate courts review de novo an order granting a Rule 12(b)(6) motion to dismiss."  *Taylor v. Bank of Am., N.A.*, 382 N.C. 677, 679 (2022).

The judiciary "only declares an act of the General Assembly void when it directly conflicts with an express provision of the constitution."  *Harper v. Hall*, 384 N.C. 292, 325 (2023).  "Ultimately, the role of our courts is limited to identifying a

redistricting plan that violates those express limitations and requiring the General Assembly to remedy those specified defects." *Id.* at 336.

## IV.    Discussion

Plaintiffs argue the panel erred by dismissing their complaint on the basis that it presented a nonjusticiable political question.  Legislative defendants argue the panel erred by ordering each party to pay their own attorneys' fees.  We address each issue in turn.

## A. Nonjusticiable Political Question

Plaintiffs contend that the General Assembly "purposefully and impermissibly aggregated voting bloc[ ]s based upon voting patterns, history of election results, political registration, demographics, and other politically revealing data which virtually guaranteed the government's preferred party would prevail in those elections[,]" thus violating their unenumerated right to a fair election under the North Carolina Constitution.

Here, the panel concluded that plaintiffs' claims were nonjusticiable political questions and were barred by *Harper v. Hall*, 384 N.C. 292 (2023) (hereinafter "*Harper III*").  On appeal, plaintiffs attempt to distinguish *Harper III* from the case at hand because their claim alleged "violations in limited, discrete election districts" and they did not seek proportional representation, and by arguing that their claims are "based on the 'fair' elections theory, grounded in the constitutional rights of citizens to be free from improper governmental interference in the election process."

In *Harper III*, the underlying dispute concerned claims that the General Assembly's 2021 redistricting plans were "unconstitutional partisan gerrymanders."[2] *Id.* at 301–02. Our Supreme Court defined partisan gerrymandering as "the practice of dividing a geographical or jurisdictional area into political units or election districts to give a particular political party or group 'a special advantage.'" *Id.* at 299 (citation omitted). Ultimately, the Court held "that partisan gerrymandering claims present a political question that is nonjusticiable under the North Carolina Constitution." *Id.* at 300.

Speaking specifically about the role of the judiciary in evaluating the redistricting powers of the General Assembly:

> Thus, plainly stated and as applied to this case, the standard of review asks whether the redistricting plans drawn by the General Assembly, which are presumed constitutional, violate an express provision of the constitution beyond a reasonable doubt. When we cannot locate an express, textual limitation on the legislature, the issue at hand may involve a political question that is better suited for resolution by the policymaking branch. As 'essentially a function of the separation of powers,' the political question doctrine operates to check the judiciary and prevent its encroaching on the other branches' authority.

*Id.* at 325 (citation omitted).

There is a nonjusticiable political question "when any one of the following is

---

[2] *See generally Harper v. Hall*, 380 N.C. 317 (2022) ("*Harper I*"); *Harper v. Hall*, 383 N.C. 89 (2022) ("*Harper II*").

present: (1) a textually demonstrable commitment of the matter to another branch; (2) a lack of judicially discoverable and manageable standards; or (3) the impossibility of deciding a case without making a policy determination." *Id.* In the event of such a question, "courts must refuse to review political question, that is, issues that are better suited for the political branches." *Id.*

Our Supreme Court ultimately concluded that partisan gerrymandering claims present a nonjusticiable political question because "[a]ll three of these factors are present" in such claims. *Id.* First, "the constitution expressly assigns the General Assembly redistricting authority subject only to express limitations." *Id.* at 350. Furthermore, implementation of "a proportionality or political fairness requirement in the constitution without explicit direction from the text inherently requires policy choices and value determinations and does not result in a neutral, manageable standard." *Id.*

First, though plaintiffs are not bringing a statewide challenge seeking proportional representation so that a particular party will win, their claim still fits squarely within the definition of partisan gerrymandering. In their complaint, plaintiffs alleged that the General Assembly drew specific districts "intentionally to assure, to the extent possible, a political victory in the 2024 election for candidates of one political party, in this case, the Republican Party." Further, they alleged that the General Assembly reapportioned voters in the challenged districts "in such a way to turn the districts from competitive to favoring one political party's candidates, in

this case[,] the Republican Party." Although their challenge is limited to different districts and does not purport to seek the same remedy, it is still at its core an allegation that the General Assembly acted to change districts to give one party or group an advantage in the upcoming elections. Accordingly, plaintiffs' claim presents a nonjusticiable political question and is therefore beyond the reach of this Court. *See id.* at 378–79.

Second, though plaintiffs bring their challenge under Article I, Section 36 of our state constitution,[3] "[o]ur constitution expressly assigns the redistricting authority to the General Assembly subject to explicit limitations in the text" and "a violation of that limitation must be proved beyond a reasonable doubt." *Id.* at 300, 323. "Those limitations do not address partisan gerrymandering." *Id.* at 300; *see also id.* at 370 (explaining that Article II, Sections 3 and 5 "contain four express limitations on the General Assembly's otherwise explicit redistricting authority, none of which address partisan gerrymandering."(citing N.C. Const. art. II, §§ 3, 5)).

Here, Plaintiffs rely on an unenumerated right to fair elections as the limitation on the General Assembly's authority to gerrymander on a partisan basis.

---

[3] On appeal, plaintiffs also argue that Article I, Sections 10 and 19 of the North Carolina Constitution give rise to a right to fair elections. However, plaintiffs did not present this argument below, and it is therefore not preserved for appellate review. *See State v. Ellis*, 205 N.C. App. 650, 654 (2010) ("[T]he law does permit parties to swap horses between courts in order to get a better mount in the [reviewing court]."(alteration in original)). Despite plaintiffs' contention that they are presenting "different paths" on appeal for this court to articulate the unenumerated right to fair elections, plaintiffs needed to present this argument to the trial court below for its consideration of the argument in order for this Court to properly review whether the trial court erred. *See* N.C. R. App. P. 10(a).

However, we are constrained to reviewing whether the act of the General Assembly violated an express constitutional provision. *Harper III*, 384 N.C. at 325. Accordingly, we cannot conclude that the way the General Assembly drew the challenged districts violated those express limitations.

Plaintiffs alleged that the General Assembly acted unconstitutionally by drawing certain districts to favor one political party or group, which is tantamount to alleging partisan gerrymandering. As our Supreme Court has held that partisan gerrymandering claims present nonjusticiable political questions, their claim is foreclosed by *Harper III*. Furthermore, plaintiffs rely on an unenumerated right as the basis of their allegation that the General Assembly acted unconstitutionally. Because we review whether the General Assembly violated an *express* provision of our constitution, plaintiffs' reliance on an unenumerated right cannot be the basis for an unconstitutional act of the General Assembly. Therefore, the trial court properly granted legislative defendants' motion to dismiss plaintiffs' claims as barred by *Harper III*.

## B. Motion to Dismiss Cross Appeal

On cross-appeal, legislative defendants argue that the trial court erred by ordering each party to pay their own attorneys' fees. Specifically, legislative defendants maintain the prevailing party must "file a motion seeking attorneys' fees in the first instance," and only after such a motion is filed by the prevailing party "can the court entertain granting or denying such an award."

"In North Carolina, parties to litigation are generally responsible for their own attorneys fees unless a statute provides otherwise." *McLennan v. Josey*, 247 N.C. App. 95, 98 (2016). Such "statutes awarding attorneys fees to prevailing parties are in derogation of the common law and therefore must be strictly construed." *Id.* (cleaned up).

> In any civil action, special proceeding, or estate or trust proceeding, the court, upon motion of the prevailing party, may award a reasonable attorney's fee to the prevailing party if the court finds that there was a complete absence of a justiciable issue of either law or fact raised by the losing party in any pleading.

N.C.G.S. § 6-21.5 (2023). This section's purpose "is to 'discourage frivolous legal action.'" *McLennan*, 247 N.C. App. at 98 (quoting *Short v. Bryant*, 97 N.C. App. 327 (1990)).).

> To support an award of attorney's fees under section 6-21.5, a plaintiff must either: (1) reasonably have been aware at the time the complaint was filed, that the pleading contained no justiciable issue, or (2) found to have persisted in relitigating the case after the point where he should have reasonable become aware that the pleading he filed no longer contained a justiciable issue.

*Cauley v. Cauley*, 299 N.C. App. 315, 320 (2025) (cleaned up). "A prevailing party as used in section 6-21.5 is a party who prevails on a claim or issue in an action, not a party who prevails in the action." *Id.* (emphasis omitted) (cleaned up).

Legislative defendants made no motion for attorneys' fees below. They did not request that plaintiffs pay their attorneys' fees in the hearing before the trial court,

in their motion to dismiss plaintiffs' complaint, or by any other filing. Furthermore, legislative defendants did not file a motion to reconsider the trial court's order, which they could have done before the case was final as to the Board of Elections defendants nearly one month later.

"In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired if the specific grounds were not apparent from the context." N.C. R. App. P. 10(a)(1). An issue may be deemed preserved "by rule or law." *Id.* Plaintiffs contend that this issue is not preserved for appellate review because legislative defendants did not make any motion for attorneys' fees. Legislative defendants contend this issue is "deemed preserved" absent their request to the trial court because "the statute allows such a motion only after the court has determined who the prevailing party is, requiring the court to make findings of fact and conclusions of law to support any award."

> In matters of statutory construction, our primary task is to ensure that the purpose of the legislature, the legislative intent, is accomplished. Legislative purpose is first ascertained from the plain words of the statute. Moreover, we are guided by the structure of the statute and certain canons of statutory construction. . . . A construction which operates to defeat or impair the object of the statute must be avoided if that can reasonably be done without violence to the legislative language.

*Elec. Supply Co. of Durham v. Swain Elec. Co.*, 328 N.C. 651, 656 (1991) (cleaned up).

"In statutory interpretation, we take the statute as we find it . . . because a law is the

best expositor of itself." *N.C. Dep't of Env't Quality v. N.C. Farm Bureau Fed'n, Inc.*, 291 N.C. App. 188, 193 (2023) (cleaned up).

Legislative defendants' reading of the statute is flawed. The statute says: "the court, upon motion of the prevailing party, may award a reasonable attorney's fee to the prevailing party." N.C.G.S. § 6-25.1. Plainly read, the statute simply requires there to be a motion by the prevailing party before the trial court can award attorneys' fees.[4] The statute constrains the trial court's ability to award such fees until after a party has prevailed—not the ability of the parties to make such a motion. Furthermore, the statute does not restrict the trial court's ability to *not* award attorneys' fees absent a motion from the prevailing party. Only if the trial court awards attorneys' fees is it required to make findings about the justiciability of the underlying claim to support its award. *See id.*

Plainly read, section 6-21.5 does not impose an affirmative duty for trial courts to solicit motions for attorneys' fees from prevailing parties or to extend proceedings when the party has made no indication during the pendency of the litigation that it would request such fees. Rather, this burden is placed squarely on the prevailing party to make this request to the trial court. Legislative defendants had ample opportunity to request attorneys' fees; they declined to do so. Accordingly, this issue

---

[4] Indeed, it is a common practice to include this request for attorneys' fees in the responsive pleading. *See, e.g., Bryson v. Sullivan*, 330 N.C. 644, 652–52 (1992) (the defendant requested attorneys pursuant to N.C.G.S. § 6-21.5 in her answer).

is not preserved for appellate review, nor is it deemed preserved by operation of law. Thus, we dismiss the cross appeal.

## V. Conclusion

For the foregoing reasons, we affirm the order of the trial court and dismiss legislative defendants' cross appeal.


AFFIRMED IN PART; DISMISSED IN PART.

Judges STROUD and FLOOD concur.

Report per Rule 30(e).