IN THE SUPREME COURT OF NORTH CAROLINA

 2021-NCSC-84

 No. 453A20

 Filed 13 August 2021

 SOUTHERN ENVIRONMENTAL LAW CENTER

 v.
 THE NORTH CAROLINA RAILROAD COMPANY, and MICHAEL WALTERS,
 JACOB F. ALEXANDER III, WILLIAM V. BELL, MARTIN BRACKETT, LIZ
 CRABILL, WILLIAM H. KINCHELOE, JAMES E. NANCE, JOHN M. PIKE,
 GEORGE ROUNTREE III, FRANKLIN ROUSE, NINA SZLOSBERG-LANDIS,
 AND MICHAEL L. WEISEL, in their official capacities as members of the Board of
 Directors of the North Carolina Railroad Company

 Appeal pursuant to N.C.G.S. § 7A-27(a)(2) from an order and opinion entered

 on 20 August 2020 by Judge Michael L. Robinson, Special Superior Court Judge for

 Complex Business Cases, in Superior Court, Wake County, after the case was

 designated a mandatory complex business case by the Chief Justice pursuant to

 N.C.G.S. § 7A-45.4(b). Heard in the Supreme Court on 19 May 2021.

 Kimberly Hunter, Ramona H. McGee, and Maia Hutt for plaintiff-appellant.

 James P. Cooney III and Rebecca C. Fleishman for defendant-appellees.

 ERVIN, Justice.

¶1 In this case, we are called upon to decide whether defendant North Carolina

 Railroad Company is an “agency” or “subdivision” of “North Carolina government” for

 purposes of the Public Records Act, N.C.G.S. § 132-1. In order to resolve this issue,

 we are required to interpret the pertinent provisions of the Public Records Act, in
 SELC V. N.C. RAILROAD

 2021-NCSC-84

 Opinion of the Court

 light of the totality of the circumstances, in order to determine whether the state

 government exercises such substantial control over the Railroad that it is necessarily

 an agency or subdivision of state government. After carefully weighing all of the

 relevant facts and circumstances, we determine that the Railroad has been an

 independent, private corporation since it was chartered in 1849 and that, while the

 State does exert a considerable degree of control over the Railroad, it primarily

 exercises this authority in its capacity as the Railroad’s sole shareholder rather than

 in its capacity as a sovereign. As a result, we affirm the trial court’s order.

 I. Factual and Procedural Background

 A. History and Current Operations of the Railroad

¶2 The Railroad, which was chartered by an act of the General Assembly in 1849,

 An Act to incorporate the North Carolina Rail Road Company, ch. LXXXII, § 1, 1848–

 1849 N.C. Laws, 138, 139, is the oldest existing North Carolina corporation. Although

 interest in building a railroad in North Carolina surfaced as early as the 1820’s and

 even though the construction of such a facility was delayed for over twenty years by

 high construction costs and the fact that “[p]rivate capital was inadequate,” “the

 legislature long refused to tax the public for state aid.” Trelease, Allen W., The North

 Carolina Railroad, 1849-1871, and the Modernization of North Carolina, 14 (1991).

 Throughout this period, the proponents of a railroad argued that the availability of

 such a facility was critical to the improvement of North Carolina’s notoriously poor
 SELC V. N.C. RAILROAD

 2021-NCSC-84

 Opinion of the Court

 internal transportation system and expressed concern that, without a railroad,

 “North Carolina’s ports would continue to languish while her neighbors waxed rich

 and powerful at her expense” and that the State “would remain what many of her

 citizens ruefully admitted her to be, a backwater, the Rip Van Winkle State.” Id.

¶3 Although many people opposed the idea of State ownership of a business

 enterprise, the State’s involvement in the development, construction, and operation

 of a railroad was “the product of state pride and economic necessity.” Trelease, Allen

 W., The Passive Voice: The State and the North Carolina Railroad, 1849-1871, 61

 The North Carolina Historical Review 174, 175 (1984). In view of the fact that the

 proposed railroad had an estimated construction cost of three million dollars and the

 fact that “[n]o one believed that private investors in the state would or could subscribe

 that much money,” railroad advocates believed that “[c]hief reliance would have to be

 placed on the public sector, primarily the state.” Id. at 177. On the other hand,

 railroad critics “demanded most commonly that the state turn over control of the road

 to its private stockholders, whose enlightened self-interest would quickly maximize

 earnings and dividends.” Id. at 175. According to the Railroad, “[t]he working model

 devised was a public-private entity structured as a private business corporation.”

¶4 As an initial matter, the State pledged to contribute two million dollars to the

 cost of building the proposed railroad, with this amount to be paid once private

 investors had pledged the remaining one million dollars. Id. at 177. After
 SELC V. N.C. RAILROAD

 2021-NCSC-84

 Opinion of the Court

 construction of the railroad began, however, it became apparent that the completion

 of the project would require another one million dollars, with the State ultimately

 agreeing to provide the needed additional funds for the project. Id. at 178.

¶5 The Railroad’s original charter allowed the Governor to appoint eight of the

 twelve members of the Railroad’s board. Id. According to an amended charter that

 was approved by the board in 1855, the State held three-quarters of the Railroad’s

 stock and an equivalent number of voting shares in corporate elections. Id. at 179.

 However, “[t]he state’s power was exercised very lightly.” Id. at 180. More

 specifically, “[a]lthough politics played a large role in directorship appointments, it

 almost never intruded on operational or financial matters,” so that, as a general

 proposition, “[s]tate control was unobtrusive.” Trelease, Allen W., A Southern

 Railroad at War: The North Carolina Railroad and the Confederacy, 164 Railroad

 History 5, 5 (1991).

¶6 In 1997, the General Assembly authorized the State to buy out the remaining

 privately held shares of Railroad stock. An Act to Make Appropriations for Current

 Operations and for Capital Improvements for State Departments, Institutions, and

 Agencies, and for Other Purposes [hereinafter 1997 Budget Appropriation], ch. 443

 § 32.30, 1997 N.C. Sess. Laws 1344, 1842–44. In 1998, the State loaned the Railroad

 sixty-one million dollars to complete this stock purchase transaction. The Railroad

 repaid the principal amount of this loan to the State over a period of five years, during
 SELC V. N.C. RAILROAD

 2021-NCSC-84

 Opinion of the Court

 the first two of which it paid interest on the loan, after which the General Assembly

 enacted legislation which provided that interest would no longer accrue on the

 principal balance. As a result of the buyout, the State became the only holder of

 voting shares in the Railroad by 1998 and became the Railroad’s sole shareholder in

 2006.

¶7 After the approval of the purchase of the remaining privately held shares by

 the State in 1997, all of the Railroad’s directors have been appointed by the State.

 Id. at 1843–44. At present, the Railroad’s board consists of thirteen directors, seven

 of whom are appointed by the Governor, three of whom are appointed by the General

 Assembly upon the recommendation of the Speaker of the House of Representatives,

 and three of whom are appointed by the General Assembly upon the recommendation

 of the President Pro Tempore of the Senate. N.C.G.S. § 124-15(a) (2019). Of the

 seven gubernatorial appointees, one must be a member of the Board of

 Transportation and one must be either the Secretary of Commerce or the Secretary’s

 designee. Id. The Railroad cannot sell, lease, mortgage, or otherwise encumber its

 property without board approval. Id. § 124-15(b).

¶8 Consistently with the requirements of Chapter 55 of the North Carolina

 General Statutes, the Railroad operates pursuant to a set of corporate bylaws.

 Although the Governor does appoint a majority of the members of the board, the

 board does not have to obtain approval from the Governor or any other state official
 SELC V. N.C. RAILROAD

 2021-NCSC-84

 Opinion of the Court

 before taking actions such as establishing a budget or selling property. In 2019, the

 Governor sent a letter to the Railroad asking to be provided with the information

 required by N.C.G.S. § 124-17, additional information relating to the actions that had

 been taken at board meetings, and the contents of trackage rights agreements and

 requesting that, “as the shareholders’ representative,” “the Board refrain from

 engaging in any real estate transactions until further notice.” Although the board

 complied with the Governor’s request for information, it “continued to do business in

 [its] real estate transactions” while “ke[eping the Governor’s office] abreast of the

 negotiations” relating to a specific real estate transaction in which the Governor had

 expressed interest. All of the members of the Railroad’s board testified that they cast

 independent votes during board meetings and act independently of the will of the

 Governor or the General Assembly.1

¶9 At present, the Railroad owns approximately 317 miles of railroad trackage

 that runs from Charlotte to Morehead City. The Railroad holds this property in its

 own corporate name and pays property taxes to the sixteen counties through which

 its tracks run. The Railroad’s revenue is derived from a trackage rights agreement

 1 At least one board member testified that he had “never–in [his] entire time on the

 Board . . . gotten directions from” or “been directed to do something by anybody, either
 legislatively or executive branch,” while another testified that no elected official, member or
 agent of the General Assembly, or representative of the Department of Transportation or the
 Department of Commerce had ever directed him to vote a certain way during a board
 meeting.
 SELC V. N.C. RAILROAD

 2021-NCSC-84

 Opinion of the Court

 that it has with Norfolk Southern, a private railroading entity that operates using

 the Railroad’s property. In addition, the Railroad generates revenue through utility

 encroachment fees, the proceeds from leasing real property, and investment earnings.

 The Railroad’s stated mission is to “develop the railroad’s unique assets for the good

 of the people of North Carolina” “by enabling freight to grow business, expanding rail

 to move people and investing in North Carolina.”

¶ 10 The General Assembly directed the Railroad to pay a one-time dividend of

 $15,500,000 to the State, in its capacity as the Railroad’s sole shareholder, in 2013.

 An Act to Make Base Budget Appropriations for Current Operations of State

 Departments, Institutions, and Agencies, and for Other Purposes [hereinafter 2013

 Budget Appropriation], S.L. 2013-360, § 34.14(f), 2013 N.C. Sess. Laws 995, 1340. In

 addition, the 2013 legislation required the Railroad to submit annual reports to the

 General Assembly that included information concerning its strategic and capital

 investment plans; its anticipated dividends for the next three fiscal years; and a

 description of its business and subsidiaries, the markets in which it operates, and the

 properties that it owns. Id. § 34.14(d) at 1339–40.

¶ 11 Although the Railroad pays property taxes to the counties in which it owns

 property, it does not pay property taxes to the State. The Railroad does, however,

 pay franchise taxes to the State. In spite of the fact that it files a federal income tax

 return, it does not pay federal taxes because its revenues qualify as “income derived
 SELC V. N.C. RAILROAD

 2021-NCSC-84

 Opinion of the Court

 from . . . the exercise of any essential governmental function and accruing to a State.”

 26 U.S.C. § 115. The State University Railroad Company, which is a for-profit

 subsidiary of the Railroad, pays both federal and state income taxes.

¶ 12 The Railroad works closely with the Department of Transportation and

 communicates frequently with Department employees concerning transportation-

 related matters. In the past, the Department of Transportation has made

 investments using federal and state funds to improve the Railroad’s corridor.

 According to the Railroad, these monies constitute a “capital contribution to the

 company by the shareholder.”

 B. Procedural History

¶ 13 In 2018, plaintiff Southern Environmental Law Center was one of several

 organizations advocating for the construction of the Durham-Orange light rail transit

 project, a 17.7-mile system that would have provided an additional mass transit

 connection between Durham and Chapel Hill. The proposed light rail project would

 have utilized facilities adjacent to certain existing railroad trackage and other real

 property that the Railroad owned in downtown Durham. In 2019, the Railroad and

 certain other entities declined to sign a cooperative agreement that would have

 allowed the light rail project to move forward. After the collapse of the proposed

 cooperative agreement, the project’s board voted to cease further efforts toward the

 completion of the light rail project. On 23 May 2019, SELC, acting in reliance upon
 SELC V. N.C. RAILROAD

 2021-NCSC-84

 Opinion of the Court

 the Public Records Act, submitted a request to defendant Scott M. Saylor, president

 of the Railroad, seeking to inspect all of the records in the Railroad’s possession

 relating to the light rail project that had been generated on or after 1 January 2018.

 The Railroad declined to provide the requested records on the grounds that it was not

 subject to the Public Records Act.

¶ 14 On 1 July 2019, the SELC filed a complaint in the Superior Court, Wake

 County, against, Mr. Saylor; the Railroad; and Michael Walters, Jacob F. Alexander,

 III, William V. Bell, Martin Brackett, Liz Crabill, William H. Kincheloe, James E.

 Nance, John M. Pike, George Rountree, III, Franklin Rouse, Nina Szlosberg-Landis,

 and Michael L. Weisel, in their official capacities as members of the Railroad’s board

 of directors, in which it requested the entry of an order declaring that the Railroad

 was an agency of the State of North Carolina for purposes of the Public Records Act,

 declaring that the records that SELC had requested from the Railroad constituted

 public records, and ordering the Railroad to make those records available for

 inspection by SELC. On 2 August 2019, defendants filed a motion seeking the entry

 of judgment on the pleadings in their favor, which the trial court denied on 11

 September 2019.

¶ 15 After the discovery process had been completed, the parties filed cross-motions

 seeking the entry of summary judgment in their favor, with both parties having

 acknowledged that an examination of the record did not reveal the issue of any
 SELC V. N.C. RAILROAD

 2021-NCSC-84

 Opinion of the Court

 genuine issue of material fact and that the sole issue before the trial court was

 “whether, as a matter of law, the [Railroad] is an agency of the State for purposes of

 the Public Records Act.” On 20 August 2020, the trial court entered an order granting

 summary judgment in favor of defendants.

¶ 16 In reaching this result, the trial court began by describing the establishment

 and subsequent operations of the Railroad before discussing the decisions of the Court

 of Appeals in News & Observer Publ’g. Co. v. Wake Cty. Hosp. Sys., Inc., 55 N.C. App.

 1, 7 (1981), and Chatfield v. Wilmington Hous. Fin. and Dev. Inc., 166 N.C. App. 703

 (2004), both of which addressed the issue of whether certain entities were subject to

 the Public Records Act. According to the trial court, “the facts of neither case [we]re

 substantially similar to the unique situation before the court [in this case]—a private

 corporation whose sole shareholder is the State of North Carolina; therefore, a

 comparison of these two cases to the facts of this case [was] insufficient” to permit a

 determination of whether the Railroad was a government agency or subdivision.

¶ 17 After concluding that the ultimate issue that it faced in this case hinged “on

 whether the [Railroad was] subject to provisions of the Public Records Act, a statute

 duly enacted by the General Assembly of North Carolina,” the trial court reasoned

 that it “ha[d] a responsibility to consider whether the General Assembly intended for

 the [Railroad] to be considered a government agency for purposes of the Act.” In

 conducting the required inquiry, the trial court identified “several instances in which
 SELC V. N.C. RAILROAD

 2021-NCSC-84

 Opinion of the Court

 the General Assembly ha[d] seemingly expressed its intent that the [Railroad] should

 not be considered an agency of the State,” such as the fact that N.C.G.S. § 124-12

 authorized the Railroad to exercise the power of eminent domain under the statutory

 provisions related to private condemnors rather than public condemnors. In addition,

 the trial court pointed out that “the fact that the [Railroad] has to qualify for an

 exemption in order for its taxable gross income to be excluded from the Internal

 Revenue Code is further indication that the [Railroad] is not an agency of the State”

 on the theory that state government agencies “are not subject to federal taxation to

 begin with.” In the same vein, the trial court determined that the fact that the

 Secretary of Commerce was statutorily required to serve as a member of the

 Railroad’s board provided further evidence that the Railroad was not a government

 agency in light of the constitutional and statutory provisions that are intended to

 limit double office-holding.

¶ 18 The trial court further noted that legislation enacted in 2013, which required

 the Railroad to make an annual report to the General Assembly, provided additional

 grounds for believing that the General Assembly did not intend for the Railroad to be

 subject to the Public Records Act. 2013 Budget Appropriation, S.L. 2013-360, § 34.14,

 2013 N.C. Sess. Laws at 1138–42. The 2013 legislation rested upon a study completed

 by the General Assembly’s Program Evaluation Division,2 an independent entity that

 2 N.C.G.S. § 120-36.11 provides that the Program Evaluation Division
 SELC V. N.C. RAILROAD

 2021-NCSC-84

 Opinion of the Court

conducts research for the General Assembly, which found that the Railroad was “not

subject to the State’s public records law.” After highlighting the Railroad’s corporate

status, the trial court expressed concern that “equating majority, or sole, ownership

with degree of supervisory control would, in effect, collapse the [Railroad]’s corporate

personhood” on the theory that a corporation, even one with a single owner, is an

entity that is distinct from its shareholders. For that reason, the trial court concluded

that the SELC was essentially asking it to ignore the Railroad’s corporate structure,

an action that the trial court did not believe itself authorized to take. In light of its

determinations that the Railroad “operates as an independent corporate entity” and

that the General Assembly had failed on multiple occasions to declare the Railroad a

public agency, the trial court concluded that, since the Railroad was not an agency of

the State, it was not subject to the Public Records Act. The SELC noted an appeal

from the trial court’s order to this Court.

C. Parties’ Arguments

 is established as a staff agency of the General Assembly. The
 purpose of the [Program Evaluation Division] is to assist the
 General Assembly in fulfilling its responsibility to oversee
 government functions by providing an independent, objective
 source of information to be used in evaluating whether programs
 or activities of a State agency, or programs or activities of a non-
 State entity conducted or provided using State funds, are
 operated and delivered in the most effective and efficient
 manner and in accordance with law.
 SELC V. N.C. RAILROAD

 2021-NCSC-84

 Opinion of the Court

¶ 19 In seeking relief from the trial court’s order before this Court, the SELC begins

 by arguing that the Railroad should be deemed to be subject to the Public Records

 Act on the grounds that it performs important public and government functions, that

 the State owns one hundred percent of the Railroad’s stock, and that the Railroad

 “was formed to enhance the economic well-being of the State and its citizens as a

 whole.” In discussing the nine factors enumerated by the Court of Appeals in News

 & Observer, 55 N.C. App. at 11, the SELC asserts that, when each of these factors is

 properly evaluated in light of the record that was developed before the trial court in

 this case, the resulting analysis “establish[es] the State’s substantial degree of

 supervision and control” over the Railroad. More specifically, the SELC argues that:

 (1) the State selects all of the Railroad’s directors; (2) the State must approve all

 substantive amendments to the Railroad’s articles of incorporation; (3) the State

 provided the primary source of funding for the initial construction of the Railroad,

 loaned sixty-one million dollars to the Railroad at the time that the remaining shares

 of that entity came into State ownership in 1998, and has continued to invest in the

 Railroad; (4) the Railroad is required to transfer its assets to the State upon

 dissolution; (5) revenue collected by the Railroad is to be used “for the public good”;

 (6) the Railroad’s records are subject to government audit pursuant to N.C.G.S. § 124-

 17; (7) the Railroad must make a report concerning its receipts, expenditures, debts,

 leases, sales, property acquisitions, sales of stock, and more to the State pursuant to
 SELC V. N.C. RAILROAD

 2021-NCSC-84

 Opinion of the Court

 N.C.G.S. § 124-17; (8) the State reviews the Railroad’s investment plan and has

 influence upon the Railroad’s annual budget by virtue of the fact that two appointees

 to positions in the Governor’s administration are required to serve on the Railroad’s

 board; and (9) the State has other means to control the Railroad’s activities, including

 the fact that the Governor has the ability to appoint members of the board and the

 fact that the Railroad’s “stated purpose is to serve North Carolina rather than

 generate profit.”

¶ 20 In light of the substantial degree of control that the State exercises over the

 Railroad, the SELC argues that the trial court’s decision that the Railroad was not

 subject to the Public Records Act conflicts with News & Observer and Chatfield. In

 the SELC’s view, the fact that the Railroad has a separate corporate existence does

 not make the Railroad a distinct entity from the State, which is “different from a

 traditional private shareholder,” rendering the Railroad “a unique entity, with

 unique powers and responsibilities owed to its citizens as a sovereign.” According to

 the SELC, the issue of “why the State exerts control [over the Railroad] is less

 important than the substance of the control,” with the extensive degree of control that

 the State exercises over the Railroad being sufficient to make the Railroad the

 functional equivalent of an agency of the State.

¶ 21 The SELC disputes the validity of the trial court’s analysis of the relevant

 legislative intent by arguing that the trial court erroneously examined legislative
 SELC V. N.C. RAILROAD

 2021-NCSC-84

 Opinion of the Court

materials other than the Public Records Act in the course of determining that the

Railroad was not subject to the Public Records Act. According to the SELC, the trial

court’s determination that the Railroad is not an agency of the State “as a general

matter” and “for all purposes” is irrelevant to the issue that is before us in this case

on the theory that the trial court should have focused upon the issue of whether the

Railroad was an agency of the State for purposes of the Public Records Act rather

than whether it was an agency of the State for all purposes. The SELC argues that

the Program Evaluation Division’s conclusion that the Railroad was “not subject to

the State’s public records law” was nothing more than an “unconsidered statement

by staff in a report prepared decades after the Public Records Act” that “warrants no

deference and does not come close to constituting legislative intent,” with “[f]ootnotes

in legislative research reports [not being] how law is made in North Carolina.”

Finally, the SELC contends that the people’s power to inspect government records

under the Public Records Act is derived from the constitutional principle that all

governmental power originates “from the people,” N.C. Const. art. I § 2, and that the

people of North Carolina “shall not be taxed or made subject to the payment of any

impost or duty without the consent of themselves or their representatives in the

General Assembly, freely given.” N.C. Const. art. I § 8. As a result, the SELC argues

that the citizens of North Carolina “must have access to records of the railroad

company they own.”
 SELC V. N.C. RAILROAD

 2021-NCSC-84

 Opinion of the Court

¶ 22 In seeking to persuade us to uphold the trial court’s order, defendants argue

 that the State does not exercise sufficient control over the Railroad to warrant a

 finding that the Railroad is a public agency under the factors discussed in News &

 Observer and Chatfield. Defendants note that Chatfield held that “an entity’s stated

 purpose of performing a function that is of use to the general public, without more, is

 insufficient to make the Public Records Law applicable,” 166 N.C. App. at 709, and

 that many private organizations, such as non-profit corporations, have been formed

 for the purpose of benefiting the general public. In defendants’ view, the Railroad is

 not a government agency for purposes of Chatfield given that it acts independently of

 the State and has, on occasion, declined to comply with requests that the board had

 received from the Governor.

¶ 23 After discussing the nine factors delineated in News & Observer for the purpose

 of determining the degree of control that the government exercises over the Railroad,

 defendants conclude that a proper analysis of the relevant factors weighs in favor of

 a determination that the Railroad is a private entity. For example, defendants argue

 that the only reason that the Railroad’s assets would be transferred to the State upon

 dissolution is that the State is the Railroad’s sole shareholder and that any one

 hundred percent shareholder would be able to name all of the members of the

 corporation’s board. In addition, defendants note that the Railroad owns its real

 property independently of the State and that the State is required to pay the Railroad
 SELC V. N.C. RAILROAD

 2021-NCSC-84

 Opinion of the Court

 for the right to lease property from it. Similarly, defendants assert that the Railroad

 is a for-profit corporation that earns its own revenue and distributes dividends to the

 State at the sole discretion of the board.

¶ 24 According to defendants, the ultimate issue that must be decided in this case

 is one of statutory interpretation, which means that the General Assembly’s intent

 with respect to whether the Railroad is subject to the Public Records Act should be

 deemed to be controlling. Defendants contend that the trial court correctly evaluated

 the impact of the 2013 legislation, which “imposed reporting requirements [on the

 Railroad] similar to those required of companies whose stock is publicly traded” and

 evinced the General Assembly’s belief that the Railroad was not a government

 agency. In defendants’ view, the Program Evaluation Division’s report regarding the

 Railroad did not constitute an “unconsidered statement” or a “footnote”; instead,

 defendants contend that this determination was critical to an understanding of the

 manner in which the 2013 legislation was structured. Defendants express concern

 that a decision to disregard the Railroad’s corporate existence in this case would have

 broader implications for other for-profit and non-profit corporations in which the

 State holds interests. In view of the fact that the State “invests as a shareholder in

 hundreds, if not thousands, of entities, both publicly traded and privately held,”

 defendants caution that a holding that the State’s ownership of corporate stock has
 SELC V. N.C. RAILROAD

 2021-NCSC-84

 Opinion of the Court

 the effect of making the entity in question a public agency would render many private

 and nonprofit institutions entities subject to the Public Records Act.

 II. Legal Analysis

 A. Standard of Review

¶ 25 This Court reviews appeals from trial court summary judgment orders using a

 de novo standard of review. JVC Enterprises, LLC v. City of Concord, 376 N.C. 782,

 2021-NCSC-14, ¶ 8 (citing In re Will of Jones, 362 N.C. 569, 573 (2008)). Summary

 judgment is appropriate when “there is no genuine issue as to any material fact” and

 a “party is entitled to a judgment as a matter of law.” N.C.G.S. § 1A-1, Rule 56(c)

 (2019). As both parties have acknowledged in their briefs, the record in this case does

 not reveal the existence of a disputed issue of material fact. For that reason, the

 ultimate issue that has been presented for our consideration in this case is the purely

 legal question of whether, given the undisputed facts set out in the record, the

 Railroad is an “agency of North Carolina government or [a] subdivision” of such an

 agency as defined by the Public Records Act. See Chatfield, 166 N.C. App. at 706–07

 (holding that summary judgment was appropriate when the facts were not disputed

 “and the only issues are whether as a matter of law [the entity] is subject to the Public

 Records Law of North Carolina”).

¶ 26 The North Carolina Public Records Act provides that:

 (a) “Public record” or “public records” shall mean all
 documents, papers, letters, maps, books, photographs,
 SELC V. N.C. RAILROAD

 2021-NCSC-84

 Opinion of the Court

 films, sound recordings, magnetic or other tapes, electronic
 data-processing records, artifacts, or other documentary
 material, regardless of physical form or characteristics,
 made or received pursuant to law or ordinance in
 connection with the transaction of public business by any
 agency of North Carolina government or its subdivisions.
 Agency of North Carolina government or its subdivisions
 shall mean and include every public office, public officer or
 official (State or local, elected or appointed), institution,
 board, commission, bureau, council, department,
 authority, or other unit of government of the State or of any
 county, unit, special district or other political subdivision
 of government.

 (b) The public records and public information compiled
 by the agencies of North Carolina government or its
 subdivisions are the property of the people. Therefore, it is
 the policy of this State that the people may obtain copies of
 their public records and public information free or at
 minimal cost unless otherwise specifically provided by
 law. . . .

N.C.G.S. § 132-1 (2019). “When interpreting statutes, our principal goal is to

effectuate the purpose of the legislature.” State v. Jones, 358 N.C. 473, 477 (2004)

(quoting Liberty Mut. Ins. Co. v. Pennington, 356 N.C. 571, 574 (2002)) (cleaned up).

“Legislative intent controls the meaning of a statute.” In re B.O.A., 372 N.C. 372, 380

(2019) (quoting Brown v. Flowe, 349 N.C. 520, 522 (1998)). “The intent of the General

Assembly may be found first from the plain language of the statute, then from the

legislative history, the spirit of the act and what the act seeks to accomplish.” Lenox,

Inc. v. Tolson, 353 N.C. 659, 664 (2001) (quoting Polaroid Corp. v. Offerman, 349 N.C.

290, 297 (1998)) (cleaned up).
 SELC V. N.C. RAILROAD

 2021-NCSC-84

 Opinion of the Court

¶ 27 Although the issue of whether a particular entity is “an agency” or

 “subdivision” of state government for purposes of the Public Records Act is a question

 of first impression for this Court, the Court of Appeals has previously addressed this

 issue on two prior occasions. In News & Observer, 55 N.C. App. at 7, the Court of

 Appeals considered the extent to which the Wake County Public Health System was

 an “agency of North Carolina government” for purposes of the Public Records Act.

 According to the Court of Appeals, “[t]he critical determination” that had to be made

 in deciding whether the Public Health System was a government agency was whether

 its “ ‘independent authority’ so overshadows the county’s supervisory responsibilities

 that it forecloses a conclusion that the System is an ‘agency of North Carolina

 government or its subdivisions.’ ” Id. at 9. In holding that the Public Health System

 was subject to the Public Records Act, the Court of Appeals “look[ed] at the nature of

 the relationship between the System and the county” government and found that the

 county’s “supervisory responsibilities and control over the System [were] manifest.”

 Id. at 11. In the course of its analysis, the Court of Appeals identified the following

 facts as indicative of the substantial degree of control that the county government

 exercised over the Public Health System:

 (1) that upon its dissolution, the System would transfer its
 assets to the county; and (2) that all vacancies on the board
 of directors would be subject to the Commissioners'
 approval[;] (3) that the System occup[ies] premises owned
 by the county under a lease for $ 1.00 a year; (4) that the
 Commissioners review and approve the System's annual
 SELC V. N.C. RAILROAD

 2021-NCSC-84

 Opinion of the Court

 budget; (5) that the county conduct[s] a supervisory audit
 of the System's books; and (6) that the System report[s] its
 charges and rates to the county[;] (7) that the System be
 financed by county bond orders; (8) that revenue collected
 pursuant to the bond orders be revenue of the county; and
 (9) that the System would not change its corporate
 existence nor amend its articles of incorporation without
 the county's written consent.

 Id. In the Court of Appeals’ view, the county continued to exercise substantial control

 over the Public Health System, the Public Health System performed important public

 functions, and, before the Public Health System had assumed corporate status, it had

 conceded that it was an agency of the state and had “undergone little more than a

 change of name through incorporation.” Id. at 12. As a result, the Court of Appeals

 found that the Public Health System was a governmental agency subject to the Public

 Records Act.

¶ 28 In Chatfield, 166 N.C. App. at 704, the Court of Appeals was called upon to

 decide whether an entity which had been formed by the Wilmington Housing

 Authority and the City of Wilmington as a nonprofit corporation and the charter of

 which had been modified to make it more independent of the Housing Authority and

 the City, was subject to the Public Records Act. At the beginning of its analysis, the

 Court of Appeals noted that “each new arrangement must be examined anew and in

 its own context” and that the “nature of the relationship between a corporate entity

 and the government is the dispositive factor in determining whether the corporate

 entity is governed by the Public Records Law.” Id. at 707–08 (quoting News &
 SELC V. N.C. RAILROAD

 2021-NCSC-84

 Opinion of the Court

 Observer, 55 N.C. App. at 11). After holding that, “[p]ursuant to this Court's decision

 in News & Observer, the government must exercise ‘supervisory responsibilities and

 control’ over a corporate entity for such an entity to qualify as a government agency

 and fall within the ambit of the Public Records Law,” the Court of Appeals found that

 none of the nine factors indicating substantial government control upon which it had

 relied in News & Observer were present in Chatfield, with “an entity’s stated purpose

 of performing a function that is of use to the general public, without more, [being]

 insufficient to make the Public Records Law applicable.” Id. at 709.

¶ 29 Although we believe that both News & Observer and Chatfield were correctly

 decided and that the analytical approach that was utilized in those decisions is

 certainly relevant to the proper resolution of this case, we are not prepared to

 conclude that the nine factors delineated in News & Observer should be treated as

 outcome-determinative. Instead, we recognize that the Court of Appeals utilized a

 totality of the circumstances approach in both News & Observer and Chatfield,

 pursuant to which it weighed all of the relevant facts and circumstances in order to

 determine whether the record, when viewed in its entirety, showed that the

 government exercised such substantial control over the operations of the relevant

 entity as to render it a governmental agency or subdivision, with “each new

 arrangement [to] be examined anew and in its own context.” Id. at 707–08. At the

 end of the day, however, we must recognize that we are necessarily attempting to
 SELC V. N.C. RAILROAD

 2021-NCSC-84

 Opinion of the Court

 determine whether the relevant facts do or do not satisfy a statutory standard, a fact

 that, ultimately, makes the inquiry in which we are required to engage in this case,

 in large part, one of statutory construction. After conducting the required totality of

 the circumstances evaluation, we hold that the Railroad is not an agency or

 subdivision of government that is subject to the requirements of the Public Records

 Act.

 B. Legislation involving the North Carolina Railroad Company

¶ 30 In examining past laws, decisions, and governmental opinions relating to the

 Railroad, we conclude that, in addition to the fact that the General Assembly has had

 multiple opportunities to define the Railroad as a governmental agency without

 having done so, various components of state government have acted on numerous

 occasions in such a manner as to suggest their belief that the Railroad is a private

 corporate entity rather than a governmental agency or subdivision. While these

 determinations do not, of course, control the outcome in this case, they are, when

 taken in conjunction with our evaluation of the relevant facts and circumstances

 outlined in News & Observer and Chatfield, sufficient to persuade us that the

 Railroad is not a governmental agency or subdivision for purposes of the Public

 Records Act.

¶ 31 As we have already noted, the General Assembly enacted new reporting

 requirements applicable to the Railroad in the 2013 Budget Appropriation, S.L. 2013-
 SELC V. N.C. RAILROAD

 2021-NCSC-84

 Opinion of the Court

360, § 34.14(d), 2013 N.C. Sess. Laws at 1139–40 (codified at N.C.G.S. § 124-17),

pursuant to which the Railroad was required to “submit an annual report” to the

General Assembly that included the Railroad’s strategic and capital investment

plans, the dividends that the Railroad anticipated paying during the next three fiscal

years, a list of the properties owned by the Railroad, and a list of the Railroad’s

officers and directors, among other things. N.C.G.S. § 124-17(a). The enactment of

the 2013 legislation followed a comprehensive study of the Railroad conducted by the

Program Evaluation Division. In the legislation commissioning the Program

Evaluation Division’s study of the Railroad, An Act to Make Technical, Clarifying,

and Other Modifications to the Current Operations and Capital Improvements

Appropriations Act [hereinafter 2011 Technical Corrections Act], S.L. 2011-391, § 52,

2011 N.C. Sess. Law 1557, 1584–85, the General Assembly noted that, for the

purposes of the study, “the terms ‘State agency’ or ‘agency’ as used under Article 7C

of Chapter 120 of the General Statutes shall include the North Carolina Railroad

Company.” The inclusion of this language tends to suggest a recognition on the part

of the General Assembly that the Railroad was not a state agency, given that the

Program Evaluation Division is tasked with “evaluating whether programs or

activities of a State agency, or programs or activities of a non-State entity conducted

or provided using State funds” are being operated efficiently and in accordance with

law. N.C.G.S. § 120-36.11 (2019). Since the Railroad is not a “State agency” and is
 SELC V. N.C. RAILROAD

 2021-NCSC-84

 Opinion of the Court

 not operated “using State funds,” it was necessary for the General Assembly to define

 the Railroad as a state agency in the 2011 Technical Correction Act, S.L. 2011-391,

 § 52, 2011 N.C. Sess. Law at 1585, to give it the authority to conduct the required

 evaluation. This language would have been unnecessary in the event that the

 Railroad was already considered a state agency.

¶ 32 On the first page of the study that it performed pursuant to the requirements

 of the 2011 legislation, the Program Evaluation Division noted that the “State ha[d]

 limited mechanisms for oversight” of the Railroad given the Railroad’s status as “a

 private corporation” and that the Railroad was subject to “less stringent reporting

 requirements than publicly-traded corporations.” For that reason, the Program

 Evaluation Division suggested that the General Assembly “amend Chapter 124 of the

 General Statutes to strengthen reporting” requirements applicable to the Railroad.

 In support of its recommendations, the Program Evaluation Division stated that the

 State of North Carolina is the sole shareholder of the
 [Railroad], but it remains a private corporation. . . . As a
 private corporation, [the Railroad] files with the U.S.
 Internal Revenue Service as a C corporation and is subject
 to Chapter 55 of the General Statutes. Because [the
 Railroad] is not part of state government, several state
 laws do not apply to the corporation.

 • [Railroad] employees are not state employees under
 the State Personnel Act.
 • [The Railroad’s] Board of Directors is not a covered
 board under the State Government Ethics Act.
 • [The Railroad] is not subject to the State's public
 records law.
 SELC V. N.C. RAILROAD

 2021-NCSC-84

 Opinion of the Court

 • [The Railroad] is not reviewed as a part of the state
 budget process because it does not receive state
 appropriations.

 Although the Program Evaluation Division acknowledged that the General Assembly

 had the authority to transform the Railroad into an entity of state government by

 repealing the Railroad’s corporate charter and dissolving the corporation, it cautioned

 that acting in such a manner “would be a lengthy and complicated process” that had

 “several legal and financial implications,” including the risk that the State would

 become responsible for the Railroad’s financial obligations and the fact that the State

 would lose the income that was currently being derived from the Railroad’s franchise

 tax payments. As a result, the Program Evaluation Division did not advise the

 General Assembly to convert the Railroad into a state agency and, instead,

 recommended that the General Assembly enact legislation strengthening the

 reporting requirements to which the Railroad was subject and requiring the Railroad

 to pay a dividend to the State.

¶ 33 According to the SELC, the trial court placed “undue reliance on a footnote in

 a report written by the [Program Evaluation Division]—unelected staff tasked with

 completing research, not drafting law,” in reaching the conclusion that the Railroad

 was not subject to the Public Records Act. Although the SELC is certainly correct in

 pointing out the non-binding nature of the Program Evaluation Division’s comment,

 the record also reflects that the General Assembly enacted legislation during the 2013
 SELC V. N.C. RAILROAD

 2021-NCSC-84

 Opinion of the Court

 session that imposed additional reporting requirements upon the Railroad and

 required the Railroad to make a specific dividend payment. Although the General

 Assembly did not, to be sure, include any sort of explicit endorsement of the Program

 Evaluation Division’s position with respect to the issue of whether the Railroad was

 subject to the Public Records Act in the 2013 legislation, the General Assembly’s

 decision to adopt the Division’s ultimate recommendations does tend to suggest that

 it agreed with the logic that undergirded those recommendations.

¶ 34 In addition, the General Assembly stated in the 2013 legislation that:

 (b) Upon the request of the Governor or any committee
 of the General Assembly, [the Railroad] shall provide all
 additional information and data within its possession or
 ascertainable from its records. . . . At the time [the
 Railroad] provides information under this section, it shall
 indicate whether the information is confidential.
 Confidential information shall be subject to subsection (c)
 of this section.

 (c) Confidential information includes (i) information
 related to a proposed specific business transaction where
 inspection, examination, or copying of the records would
 frustrate the purpose for which the records were created,
 or (ii) information that is subject to confidentiality
 obligations of [the Railroad]. Confidential information is
 exempt from Chapter 132 of the General Statutes and shall
 not be subject to a request under G.S. 132-6(a).

 N.C.G.S. at § 124-17(b), (c). A careful reading of N.C.G.S. § 124-17 suggests that,

 consistently with the approach adopted by the Program Evaluation Division, the

 General Assembly did not consider the Railroad to be a governmental agency or
 SELC V. N.C. RAILROAD

 2021-NCSC-84

 Opinion of the Court

 subdivision that was subject to the Public Records Act. Simply put, there would have

 been no need for the enactment of subsection (b), which requires the Railroad to

 provide the information that had to be submitted to the Governor or the General

 Assembly without in any way limiting such requests to confidential information, in

 the event that the Railroad was already subject to the provisions of the Public Records

 Act. A similar deduction can be made from the fact that, in subsection (c), the General

 Assembly adopted a confidentiality provision applicable to information that it

 received from the Railroad that would have been unnecessary in the event that the

 Public Records Act directly applied to the Railroad. As a result, we find it difficult to

 reach any conclusion other than that the General Assembly agreed with the Program

 Evaluation Division that the Railroad was not, under existing North Carolina law,

 an agency or subdivision of State government that is obligated to comply with the

 Public Records Act.

¶ 35 Although the history surrounding the language contained in the 2013

 legislation provides the strongest indication of the General Assembly’s belief that the

 Railroad is not a governmental agency or subdivision subject to the Public Records

 Act, the language of other statutory provisions points in a similar direction. For

 example, in 1997, the General Assembly enacted legislation permitting the members

 of the Railroad’s board to request coverage under the State’s officers, directors, and

 employees’ liability policy while specifying that “[c]overage of the officers, directors,
 SELC V. N.C. RAILROAD

 2021-NCSC-84

 Opinion of the Court

 and employees of the [Railroad] under this subsection shall not be construed as

 defining the [Railroad] as a public body or defining its officers, directors, or employees

 as public officials.” 1997 Budget Appropriation, ch. 443, § 32.30, 1997 N.C. Sess.

 Laws at 1844. In 2000, the General Assembly passed An Act to Implement the

 Recommendations of the Future of the North Carolina Railroad Study Commission,

 S.L. 2000-146, 1999 N.C. Sess. Laws 869, 872, which gave the Railroad “the power of

 eminent domain to acquire property in fee simple for the purposes specified in G.S.

 40A-3(a)(4),” which affords eminent domain authority to private, rather than public,

 condemnors. N.C.G.S. § 124-12. As a result, other relevant statutory provisions

 enacted by the General Assembly consistently suggest that the Railroad is not a

 governmental agency or subdivision subject to the Public Records Act.

¶ 36 The Attorney General has suggested that the Railroad is not subject to the

 Public Records Act as well. In a 2000 opinion, the Attorney General stated that the

 “North Carolina Constitution [ ] sanctions the appropriation of public money to a

 private corporation for the accomplishment of a public purpose,” citing N.C. Const.

 art. V, § 2(7). After noting that “the 1997 General Assembly authorized the

 investment of Sixty-One Million Dollars ($61,000,000) in order to acquire the

 outstanding private shares, and thereby total control, of the [Railroad],” the Attorney

 General opined that the State also had the authority to acquire control over a

 healthcare corporation without rendering that corporation an agency of the State,
 SELC V. N.C. RAILROAD

 2021-NCSC-84

 Opinion of the Court

 described the Railroad as an example of a private corporation in which the State is

 nothing more than a shareholder, and stated that “it is clear that the System’s

 acquisition of corporate control over a nonprofit corporation does not alter the legal

 status of the corporation or vest within it attributes of the State of North Carolina.”

 Letter from Grayson G. Kelley, Senior Deputy Attorney General, to Representative

 Daniel T. Blue, Proposed Acquisition of Rex Healthcare by the University of North

 Carolina Health Care System (Mar. 8, 2000) (available at

 https://ncdoj.gov/opinions/proposed-acquisition-of-rex-healthcare-by-the-university-

 of-north-carolina-health-care-system/).

¶ 37 Similarly, according to materials provided to the trial court in this case, the

 State Ethics Commission voted in 2010 that the Railroad’s directors were not subject

 to the provisions of the State Government Ethics Act, Chapter 138A of the General

 Statutes.3 In seeking a determination that the Railroad was not a state agency

 subject to the provisions of the State Ethics Act, the Railroad contended, by means of

 a letter drafted by private counsel,4 that the “fact that the State is the sole-

 shareholder . . . does not change the private corporate status” of the Railroad, with

 3 The State Government Ethics Act is intended to “ensure that elected and appointed

 State agency officials exercise their authority honestly and fairly, free from impropriety,
 threats, favoritism, and undue influence,” with the Act serving to establish a code of ethical
 conduct “for elected and appointed state agency officials.” N.C.G.S. § 138A-2 (2019).
 4 We further note that the Railroad is not represented by the Department of Justice

 in this case and has, instead, conducted its defense using privately retained counsel, a fact
 that further tends to show that the Railroad is not a governmental agency or subdivision.
 SELC V. N.C. RAILROAD

 2021-NCSC-84

 Opinion of the Court

 there being multiple grounds for concluding that the Railroad was not an agency of

 state government, including the fact that the Railroad did not have the eminent

 domain authority available to public condemnors, that the Railroad paid property

 taxes to the sixteen counties in which it owned property, that the Railroad did not

 have the benefit of sovereign immunity, and that the Railroad’s employees were not

 state employees. In light of these and similar factors, the Commission concluded that

 the Railroad was a “unique agency,” that it “presented special issues not previously

 considered by the Commission,” and that it should not be deemed to be a state agency

 subject to the State Ethics Act. As a result, certain relevant statutory provisions and

 the decisions of the Attorney General and the State Ethics Commission, which clearly

 constitute persuasive authority that sheds light on the question that is before us in

 this case, suggest, if they do not explicitly state, that the Railroad is not a

 governmental agency or subdivision subject to the Public Records Act.

 C. Presence of “Substantial Government Control”

¶ 38 The legislative enactments and other official determinations outlined above

 are consistent with our understanding of the information contained in the record

 concerning the extent to which the State, acting in a governmental capacity, exercises

 sufficient supervision and control over the Railroad to make it a state agency or

 subdivision. Admittedly, the Railroad has enjoyed and continues to enjoy a number

 of benefits from its relationship with the State. For example, the State provided
 SELC V. N.C. RAILROAD

 2021-NCSC-84

 Opinion of the Court

 three-quarters of the Railroad’s initial capital and loaned the Railroad the funds that

 it used to complete the purchase of its remaining shares. In addition, the General

 Assembly allowed the Railroad to forego the payment of interest on the principal

 balance of this loan during the final three years of the repayment period. Finally, the

 Railroad benefits from the use of state and federal funds in making safety and service-

 related improvements to the corridor that the Railroad owns and the fact that it is

 not required to pay state and federal income taxes. As a result, a number of factors

 would tend to support a determination that the Railroad is a governmental agency or

 subdivision.

¶ 39 However, we believe that a number of countervailing factors arising from the

 Railroad’s status as a separate corporate entity outweigh the factors that favor

 classifying the Railroad as a governmental agency or subdivision. Among other

 things, the undisputed record evidence reflects that the Railroad has consistently

 maintained its separate corporate identity and structure and makes decisions

 independently of any directives that it might receive from governmental officials,

 including the Governor. For example, the Railroad adopts and funds its own budget

 without the necessity for prior approval from any governmental entity. In addition,

 the Railroad, rather than the State, owns title to its own property and exercises

 eminent domain authority as a private, rather than a public, condemnor. The

 revenues that the Railroad uses to support its operations are titled to the Railroad
 SELC V. N.C. RAILROAD

 2021-NCSC-84

 Opinion of the Court

 rather than the State; are derived from the Railroad’s trackage right agreements,

 utility encroachment agreements, real estate leases, and investment earnings rather

 than from the appropriation of state funds; and are spent, as a general proposition,

 in a manner controlled by the board rather than the Governor, the General Assembly,

 or any other agency of State government. Although the Railroad does, and has even

 been ordered, on one occasion, to pay dividends to the State, those dividend payments

 are, for the most part, made at the behest of and in an amount determined by the

 board. The revenues earned by the Railroad are reinvested into the company,

 whether through dividends that are received by the State and reinvested in the

 company’s infrastructure, or as directed by the board. Similarly, the Railroad pays

 local property taxes to the counties in which it owns property and a franchise tax to

 the State and claims an exemption from federal income taxation on the basis of a

 statutory provision that would be irrelevant in the event that the Railroad was a

 governmental agency. Although the Railroad does, on occasion, engage in planning-

 related activities with governmental agencies, the same can be said of other private

 entities as well. As a result, the manner in which the Railroad operates much more

 closely resembles the activities of a private corporation rather than those of a

 governmental agency or subdivision.

¶ 40 In seeking to persuade us to reach a different result, the SELC emphasizes the

 fact that the State is the Railroad’s sole shareholder, that the members of the board
 SELC V. N.C. RAILROAD

 2021-NCSC-84

 Opinion of the Court

are chosen by the Governor and the General Assembly, that certain members of the

board must be members of the Governor’s administration, that the Railroad’s

property must be transferred to the State upon dissolution, that the State must

approve fundamental changes to the Railroad’s corporate documents, that the

Railroad is entitled to favorable tax treatment in some instances, and that the

General Assembly has exercised authority over the Railroad for the purpose of

requiring the provision of certain information and the making of certain dividend

payments.5 Although the State, in its capacity as the Railroad’s sole shareholder,

does have a certain degree of indirect control of the entity’s day-to-day operations and

has the right to approve or disapprove certain fundamental corporate decisions, those

facts, standing alone, do not serve to make the Railroad a state agency or subdivision

and exist in all situations in which the corporation is owned by a single stockholder.

The same is true of the fact that the Railroad was organized and continues to operate

for the benefit of the public rather than for purely profit-seeking purposes, with a

similar statement being applicable to many nonprofit corporations in which the State

has no interest. Simply put, most of the information upon which the SELC relies in

 5 In view of the fact that many of the indicia of control upon which the SELC relies

stem from the fact that the State is the Railroad’s sole shareholder, any effort to cumulate
both the fact that the State is the Railroad’s sole shareholder and the fact that the State’s
status as the Railroad’s sole shareholder gives it the right to make certain decisions relating
to the Railroad, such as the election of the members of the Railroad’s board, seems to us to
result in the placing of impermissible weight upon those more specific factors in the required
totality of the circumstances analysis.
 SELC V. N.C. RAILROAD

 2021-NCSC-84

 Opinion of the Court

 seeking to persuade us that the Railroad should be deemed subject to the Public

 Records Act is the direct result of the State’s status as the Railroad’s sole shareholder

 rather than the exercise of the State’s sovereign authority.

¶ 41 Although the SELC argues that the nature of the State’s authority over the

 Railroad, rather than the source of that authority, should be deemed controlling, we

 do not find this argument persuasive. The SELC’s argument to the contrary

 notwithstanding, the basis of the State’s influence over the Railroad is critical to the

 proper resolution of the issue of whether the Railroad is a governmental agency or

 subdivision for purposes of the Public Records Act. The fundamental difference

 between a governmental entity and a private one is the extent, if any, to which the

 entity in question exercises the sovereign authority of the State. As a result, it stands

 to reason that the extent to which the State exercises sovereign authority, rather

 than authority derived from some other source, should be an important feature of any

 determination concerning the applicability of the Public Records Act.

¶ 42 The SELC’s suggestion that we should overlook the nature and source of the

 State’s authority over the Railroad is inconsistent with this Court’s jurisprudence for

 a second reason as well. Although the Railroad’s separate corporate existence does

 not, of course, control the outcome of this case, we have consistently, throughout our

 history, been disinclined to disregard the distinction between a corporation and its

 shareholders. For that reason, we have recently stated, in a different context, that,
 SELC V. N.C. RAILROAD

 2021-NCSC-84

 Opinion of the Court

 “[o]nce a corporate form of ownership is properly established, the corporation is an

 entity distinct from the shareholder, even a shareholder owning one-hundred percent

 of the stock.” Glob. Textile All., Inc. v. TDI Worldwide, LLC, 375 N.C. 72, 74 (2020).

 Nothing in the present record tends to suggest that the Railroad has failed to take

 the steps necessary to maintain its separate corporate identity or to operate in a

 fashion that exhibits a degree of independence from direct governmental control, a

 fact that further persuades us to refrain from holding that the mere fact that the

 State has certain authority over the Railroad by virtue of its status as the Railroad’s

 sole shareholder and the fact that the Railroad was organized and operates for the

 benefit of the public suffices to make the Railroad a governmental agency or

 subdivision subject to the provisions of the Public Records Act.6

¶ 43 Thus, given that both the General Assembly and other governmental entities

 have consistently treated the Railroad as a private corporation rather than a public

 agency or subdivision and given that the State, acting in its capacity as sovereign,

 6 The SELC’s suggestion that the trial court erred by examining whether the Railroad

 was a governmental agency or subdivision in general, rather than whether it was a
 governmental agency or subdivision for purposes of the Public Records Act, does not strike
 us as persuasive given that nothing in the relevant statutory language suggests that there is
 any difference between a governmental agency or subdivision, in general, and a
 governmental agency or subdivision for purposes of the Public Records Act. Instead, the
 relevant statutory language simply speaks of an “agency” or “subdivision” of State
 government. In the same vein, any argument that the Public Records Act requires an
 expansive interpretation of what is and is not a “public agency” or “subdivision” assumes the
 answer to the point at issue given that the relevant statutory language invariably refers to
 covered agencies or officers as “public” without further elaboration.
 SELC V. N.C. RAILROAD

 2021-NCSC-84

 Opinion of the Court

does not have a sufficient degree of control over the day-to-day operations of the

Railroad, we hold that the trial court did not err by granting summary judgment in

defendants’ favor in this case. As a result, the trial court’s order is affirmed.

 AFFIRMED.
 Justice EARLS dissenting.

¶ 44 This case presents a single question: can a corporate entity, wholly owned by

 the State of North Carolina, directed by a board whose members are appointed by

 State elected officials, wielding the power of eminent domain, and comprised of assets

 that will escheat to the State in the event of dissolution, evade public scrutiny under

 the Public Records Act (the Act)? The majority says yes. Because this holding runs

 contrary to the purpose of the Act and privileges the form of the corporation over the

 public nature of its governance and activities, I respectfully dissent.

 I. Background

¶ 45 The North Carolina Railroad Company (NCRR) was created by statute in 1849.

 An Act to incorporate the North Carolina Rail Road Company, ch. LXXXII, § 1, 1848–

 1849 N.C. Laws, 138. The State paid $2 million to be NCRR’s majority shareholder

 at that time, Id. § 36, came to own more of NCRR’s stock through transactions in the

 ensuing decades, and by 2006 owned all NCRR stock. Today, through its officials, the

 State chooses NCRR’s directors (N.C.G.S. § 124-15 (2019)), approves all substantive

 changes to NCRR’s articles of incorporation, facilitates financing for NCRR, receives

 reports of NCRR rates and rate changes (N.C.G.S. § 124-17), assumes control of

 revenue it collects, and stands to receive the assets of NCRR in the event of

 dissolution.

¶ 46 In 2019, the Southern Environmental Law Center (SELC) wrote to NCRR to

 request records related to NCRR’s involvement in a light rail project. SELC believed
 SELC V. N.C. RAILROAD

 2021-NCSC-84

 Earls, J., dissenting

 NCRR would be compelled to provide the records under the Public Records Act. NCRR

 denied the request and sent no records, claiming it was not subject to the Act. SELC

 filed suit to compel production of the records. After a hearing, the North Carolina

 Business Court granted NCRR’s motion for summary judgment, concluding “that if it

 were the Legislature’s intent that [NCRR] be subject to the Public Records Act, [the

 Legislature] could have made that expressly clear . . . .” Today’s majority affirms the

 Business Court’s decision, holding that although the State has exercised a

 “considerable degree” of authority over NCRR in the past 170 years, it has done so as

 NCRR’s “sole shareholder rather than in its capacity as a sovereign.” But the

 majority’s decision ignores the legislative intent of the Public Records Act, the scope

 of the statutes governing NCRR’s activities, and the realities of NCRR’s relationship

 with the government of North Carolina.

¶ 47 Today’s decision runs contrary to precedent and threatens the vitality of the

 Public Records Act. It allows a corporate entity—fully owned by the State and

 operationally intertwined with numerous government officials and agencies—to

 shield from public scrutiny its records made in connection with the transaction of

 public business. It also risks allowing the State to sidestep the requirements of the

 Public Records Act by conducting its business through a nominally private entity. It

 is the substance of an entity’s actions or operations, not its particular form, which

 dictates whether the public has right to access its records. Accordingly, I would hold
 SELC V. N.C. RAILROAD

 2021-NCSC-84

 Earls, J., dissenting

 that NCRR is a government agency subject to the Public Records Act. I respectfully

 dissent.

 II. Analysis

¶ 48 Enacted in 1975, the North Carolina Public Records Act provides that “[t]he

 public records and public information compiled by the agencies of North Carolina

 government or its subdivisions are the property of the people.” N.C.G.S. § 132-1(b)

 (2019). A “public record” is defined to include documents “made or received pursuant

 to law or ordinance in connection with the transaction of public business by any

 agency of North Carolina government or its subdivisions.” N.C.G.S. § 132-1(a). The

 Act further defines “agency of North Carolina government or its subdivisions” broadly

 to include “every public office, public officer or official (State or local, elected or

 appointed), institution, board, commission, bureau, council, department, authority or

 other unit of government of the State or of any county, unit, special district or other

 political subdivision of government.” Id. The question we must answer—and where I

 differ from the majority—is whether the phrase “agency of North Carolina

 government or its subdivisions” includes NCRR for the purposes of the Public Records

 Act.

 A. NCRR’s operations are sufficiently intertwined with those of North
 Carolina’s government to subject it to the Public Records Act

¶ 49 Forty years ago, the Court of Appeals concluded that the Wake County

 Hospital System, organized as a nonprofit corporation, was a government agency
 SELC V. N.C. RAILROAD

 2021-NCSC-84

 Earls, J., dissenting

 within the meaning of the Public Records Act because it “exercise[d] its ‘independent

 authority’ so intertwined with the [government] that it must be, and is, an ‘agency of

 North Carolina government or its subdivisions.’ ” News & Observer Pub. Co. v. Wake

 Cty. Hosp. Sys., Inc., 55 N.C. App. 1, 12 (1981), disc. rev. denied, 305 N.C. 302 (1982).

 Since the Court of Appeals decided Wake County Hospital System, it has been the

 undisturbed law of our state that a formally corporate entity may be considered a

 government agency for the purposes of the Act depending upon “the nature of the

 relationship between the [entity] and the [government].” Id. at 11. Given the

 legislature’s intent in passing the Public Records Act, this rule makes good sense—

 the purpose of the Act is to ensure that the people of North Carolina have the

 information they need to hold the government accountable to the citizens it serves.

¶ 50 A corporation’s public-serving actions do not, on their own, subject the

 corporation to the Act. See Chatfield v. Wilmington Hous. Fin. and Dev. Inc., 166 N.C.

 App. 703, 709 (2004) (“[A]n entity’s stated purpose of performing a function that is of

 use to the general public, without more, is insufficient to make the [Act] applicable.”).

 Rather, it is the “substance and not the form of the [corporation] that is the key” to

 our evaluation. Wake Cty. Hosp. Sys., Inc., 55 N.C. App. at 10. The substance of the

 corporation is often revealed by the extent to which the government exercises

 “supervisory responsibilities and control” over the entity. See Chatfield, 166 N.C. App.

 at 707. Put simply, a corporation can be “so intertwined” with the government that it
 SELC V. N.C. RAILROAD

 2021-NCSC-84

 Earls, J., dissenting

 is “an agency of North Carolina” for the purposes of the Act. Wake Cty. Hosp. Sys.,

 Inc., 55 N.C. App. at 12. But critically, it is possible that such a corporate entity,

 intertwined with the State, can be considered a public agency for the purposes of the

 Act without being treated as a state agency for all purposes. See id. at 7-8. The

 majority errs by collapsing this distinction.

¶ 51 In Wake County Hospital System, the Court of Appeals cited several specific

 aspects of the relationship between the hospital system and the county that

 demonstrated the government and the hospital system were substantially

 “intertwined.” They are of the categories that are essential to the operation of a

 corporate entity, including, but not limited to, financing, asset management,

 operations, and decision-making and control. Id. at 11. But as the court also noted,

 these aspects are not factors or elements that can be applied in each circumstance—

 “each new arrangement must be examined anew and in its own context.” Id.

¶ 52 Indeed, “examin[ing]” the relationship between NCRR and the State of North

 Carolina “anew and in its own context” reveals that the state’s “responsibilities and

 control” over NCRR are “manifest.” Wake Cty. Hosp. Sys., Inc., 55 N.C. App. at 11. A

 close examination of the relationship supports only the conclusion that NCRR must

 be a state agency for the purposes of the Act. The State selects every Director of

 NCRR, N.C.G.S. § 124-15, and those Directors perform State-mandated obligations.

 N.C. Exec. Order No. 2009-034 (Dec. 9, 2009). Two of the thirteen Directors must be
 SELC V. N.C. RAILROAD

 2021-NCSC-84

 Earls, J., dissenting

 members of the Governor’s administration, N.C.G.S. § 124-15, serving both NCRR

 and the administration to ensure effective communication and coordination between

 the organizations. The State must approve all substantive amendments to NCRR’s

 articles of incorporation. Revenue earned today by NCRR belongs to the State and is

 treated as revenue for “the public good.” In turn, the General Assembly often directs

 how those revenues are spent once they accrue to the State. See An Act to Make Base

 Budget Appropriations for Current Operations of State Departments, Institutions,

 and Agencies, and for Other Purposes [hereinafter 2013 Budget Appropriation], S.L.

 2013-360, 2013 N.C. Sess. Laws 995. NCRR’s finances and records are subject to State

 review and records requests from State officials, and the results of external audits

 are provided to the General Assembly. N.C.G.S. § 124-17. Moreover, NCRR is

 statutorily mandated to annually submit to the General Assembly a detailed financial

 report concerning its strategy, operations, and personnel. Id. NCRR also enjoys

 powers of eminent domain. N.C.G.S. § 124-12. As the majority notes, that authority

 is given to NCRR as a private condemnor, not a public one, under N.C.G.S. § 40A-

 3(a)(4). Yet N.C.G.S. § 40A-3(a) grants the power of eminent domain for “the public

 use or benefit,” another example of NCRR’s obligations to the people of North

 Carolina.

¶ 53 Just like conventional state agencies, NCRR is frequently a partner to

 departments of state government in planning and decision-making. NCRR often
 SELC V. N.C. RAILROAD

 2021-NCSC-84

 Earls, J., dissenting

 collaborates on projects with the Department of Transportation (DOT), and staff from

 both NCRR and DOT discuss those projects routinely. Leaders at the organizations

 aim to have a “regular exchange of information” between their respective governing

 boards. NCRR cooperates with DOT to serve as an intermediary between DOT and

 Norfolk Southern, another railroad company. Elsewhere, directors from the

 Department of Commerce are regularly updated on NCRR’s activities so that, in the

 words of one such director, “[c]ommerce [can] thrive in North Carolina.”

¶ 54 And, as mentioned previously, the State has owned all of NCRR’s stock since

 2006. NCRR contends that many of its entanglements with the State, like those

 detailed above, arise from the fact that the State is the sole shareholder of NCRR’s

 stock, and are thus irrelevant. But the State’s control of NCRR is essential context.

 To NCRR, the appointment of its Board members by elected state officials—the

 Governor and the General Assembly—is “the same . . . as any other private

 corporation.” Legislation mandating the frequency and content of reports is merely a

 “shareholder agreement.” As noted, under current arrangements, were the NCRR to

 be dissolved as a corporation, its assets would return to the State. NCRR claims that

 because this is simply one post-dissolution option among many, it should not bear on

 our analysis But I am unconvinced that what is presently true should be discounted

 simply because we can imagine other future alternatives. NCRR seeks to hide behind

 “the fundamental principle of corporate law that a corporation has a legal existence
 SELC V. N.C. RAILROAD

 2021-NCSC-84

 Earls, J., dissenting

 that is distinct from its shareholders” and accuses SELC of attempting to “merge the

 identity” of the State with that of the corporation, but this case requires us to examine

 the substantive relationship between the corporation and the State. We cannot, as

 the majority does, rely upon the fact of NCRR’s “separate corporate identity” or

 “corporate form.” Our inquiry concerns when a corporation is obligated to be

 transparent about its operations, and we beg the question if we rest on corporate

 formalities.

¶ 55 The majority notes that we have “consistently . . . been disinclined to disregard

 the distinction between a corporation and its shareholders.” In the majority’s view,

 we may recognize that the State is NCRR’s “sole shareholder,” possesses “a certain

 degree of indirect control of the entity’s day-to-day operations,” and “has the right to

 approve or disapprove certain fundamental corporate decisions,” but “those facts,

 standing alone, do not serve to make [NCRR] a state agency or subdivision.” Yet this

 gives insufficient weight to the many facts relevant to our inquiry which all point in

 the direction of treating NCRR as a public entity for the purposes of the Act. When

 the State owns the corporation, appoints its board, mandates its reporting, spends its

 revenue, and stands to receive the assets in the event of dissolution, we should

 recognize the obvious truth that the identity of the corporation and its sole

 shareholder—the State—are meaningfully intertwined. NCRR’s argument—that the

 activities of this kind of corporation can be hidden from scrutiny by the people of
 SELC V. N.C. RAILROAD

 2021-NCSC-84

 Earls, J., dissenting

 North Carolina—is a self-interested attempt to cleave its public business from its

 public responsibilities. Today’s decision gives that attempt the force of law. The

 “manner in which [NCRR] operates,” which the majority characterizes vaguely as

 “resembl[ing] the activities of a private corporation,” should not distract us from the

 manifest conclusion that NCRR and the State are substantially intertwined.

 B. Holding that NCRR is subject to the Public Records Act is consistent
 with the legislature’s intentions toward both NCRR and the Public
 Records Act

¶ 56 Contrary to the arguments promoted by NCRR and the majority, the

 conclusion that NCRR is subject to the Public Records Act is consistent with the

 intent of the General Assembly. This is true for two reasons.

¶ 57 First, the legislature created NCRR to benefit the State, and it has continued

 to exercise its authority over NCRR to serve the public. Troubled by the poor condition

 of the State’s transportation system and the limited connections between western

 North Carolina and the State’s eastern seaports, the General Assembly chartered

 NCRR “[t]o create a railroad company . . . to promote growth in the state.” Their

 efforts were motivated by a belief in “the importance of the railroad to the economic

 well-being of the State and its citizens as a whole.” While it is true, as NCRR

 repeatedly notes, that the large amount of money required to fund the initial

 investment in NCRR came from private sources, it is also apparent from the records

 of the time that the General Assembly intended to link the eastern and western parts
 SELC V. N.C. RAILROAD

 2021-NCSC-84

 Earls, J., dissenting

 of the State by rail with a new public-private venture.1 Moreover, the State invested

 the lion’s share of the capital: two-thirds of the initial $3 million capitalization and

 an additional $1 million just four years later. NCRR’s charter gave it powers of

 eminent domain and the liberty to build widely, “across or along any public road or

 water source.” An Act to incorporate the North Carolina Rail Road Company, ch.

 LXXXII, §§ 26–28, 1848–1849 N.C. Laws, 138, 145–50.

¶ 58 The General Assembly’s actions in the years since corroborate its original

 intent to require NCRR to operate for the benefit of the state. In 1992, a State

 advisory study group issued a report in which it noted that “where the State grants

 a private corporation special governmental powers, such as eminent domain, those

 powers are to be used for the public benefit,” and public-private partnerships like

 NCRR are “obligated to carry out the public purpose for which they were chartered.”

 In service to this obligation, the State began buying more of NCRR’s shares “to help

 promote trade, industry, and transportation within the State of North Carolina and

 to advance the economic interest of the state.” An Act to Make Appropriations for

 1 NCRR contends that its view of history, that “[the Company] was formed as a private

 corporation to meet a pressing public need the government had been unable to meet and in
 which private participation was necessary,” is “[c]ontrary to” SELC’s “assertion that the
 Company was created ‘for the benefit of the State.’ ” This is an attempt to draw a distinction
 without a difference. It benefits the State when the government charters a company to build
 a railroad connecting the ends of the State to one another and provides the majority of the
 start-up capital. An action undertaken to “meet[ ] a pressing public need” is an action
 undertaken “for the benefit of the State.” Here, the private nature of the corporation does not
 alter the General Assembly’s intention, which was to create a railroad to serve North
 Carolina and its people.
 SELC V. N.C. RAILROAD

 2021-NCSC-84

 Earls, J., dissenting

 Current Operations and for Capital Improvements for State Departments,

 Institutions, and Agencies, and for Other Purposes, ch. 443 § 32.30, 1997 N.C. Sess.

 Laws 1344, 1842–1844. This is not to say, of course, that any public-private venture

 necessarily becomes subject to the Public Records Act. However, where the venture

 is wholly owned and controlled by the State, it seems self-evident that the “public”

 part of the venture holds more import than that which is “private,” at least for the

 purposes of the Public Records Act.

¶ 59 Second, and separately, the legislature enacted the Public Records Act to

 enable public inspection of the workings of the state government and its agencies, not

 to create formalistic hideouts for public-private partnerships that wish to escape

 scrutiny. Sorely missing from the majority’s “totality of the circumstances analysis”

 is any meaningful evaluation of the scope and purpose of the Public Records Act. In

 my view, the General Assembly’s motivations for passing the Public Records Act

 suggest it intended entities like NCRR to fall within the Act’s purview.

¶ 60 The first North Carolina public records statute affirmed that public records are

 “the chief monuments of North Carolina’s past and are invaluable for the effective

 administration of government [and] for the conduct of public and private business.”

 An Act to Safeguard Public Records in North Carolina, ch. 265, § 1, 1935 N.C. Sess.

 L., 288. This statute and its 1975 successor are in keeping with American common

 law’s centuries-old recognition of the public’s right to inspect public records. See
 SELC V. N.C. RAILROAD

 2021-NCSC-84

 Earls, J., dissenting

 Joseph D. Johnson, Administrative Law—Public Access to Government-Held Records:

 A Neglected Right in North Carolina, 55 N.C. L. Rev. 1187 (1977). Historically, our

 appellate courts have agreed. Given the legislature’s “mandate for open government,”

 News & Observer Pub. Co., Inc. v. Poole, 330 N.C. 465, 475 (1992), “it is clear that the

 legislature intended to provide [through the Public Records Act] that, as a general

 rule, the public would have liberal access to public records.” News & Observer Pub.

 Co. v. State ex rel. Starling, 312 N.C. 276, 281 (1984). This is because “[g]ood public

 policy is said to require liberality in the right to examine public records.” Advance

 Publ’ns, Inc. v. Elizabeth City, 53 N.C. App. 504, 506 (1981). Just last year, this Court

 affirmed this principle:

 The Act is intended to be liberally construed to ensure that
 governmental records be open and made available to the
 public, subject only to a few limited exceptions. The Public
 Records Act thus allows access to all public records in an
 agency's possession “unless either the agency or the record
 is specifically exempted from the statute's mandate.”
 Times-News, 124 N.C. App. at 177, 476 S.E.2d at 452
 (emphasis added). “Exceptions and exemptions to the
 Public Records Act must be construed narrowly.” Carter-
 Hubbard Publ'g Co., 178 N.C. App. at 624, 633 S.E.2d at
 684.

 DTH Media Corp. v. Folt, 374 N.C. 292, 300–01 (2020).

¶ 61 Liberal access to public records is, of course, not the same as liberal

 construction of what is a public record. But there, too, our lawmakers have recognized

 the importance of granting the people ready access to records concerning the
 SELC V. N.C. RAILROAD

 2021-NCSC-84

 Earls, J., dissenting

 operations and transactions of their government: “It is an uncontestable pre-condition

 of democratic government that the people have information about the operation of

 their government . . . .” Sam J. Ervin, Jr., Controlling “Executive Privilege,”, 20 Loy.

 L. Rev. 11, 11 (1974). At bottom, “[w]hile some degree of confidentiality is necessary

 for government to operate effectively, the general rule in the American political

 system must be that the affairs of government be subject to public scrutiny.” Johnson,

 55 N.C. L. Rev. at 1188. Today’s decision undermines that principle.

¶ 62 “In matters of statutory construction, our primary task is to ensure that the

 purpose of the legislature, the legislative intent, is accomplished.” Elec. Supply Co. of

 Durham, Inc. v. Swain Elec. Co., Inc., 328 N.C. 651, 656 (1991). That purpose is “first

 ascertained from the plain words of the statute.” Id. When the General Assembly

 passed the Public Records Act, it was so the public would have insight into how

 decisionmakers were going about their work, how public policy was being enacted,

 and how the agencies of North Carolina were being operated. Indeed, the Act applies

 to records produced by an “agency” which are “made . . . in connection with the

 transaction of public business.” N.C.G.S. § 132-1(a). Furthermore, the legislature

 provided an expansive definition of what might be considered an agency. As discussed

 above, if we were to apply the rule which has been the law in our state for the past

 forty years, NCRR falls firmly within the meaning of “agency.” While some

 government entities are enumerated, the language of the statute considers that not
 SELC V. N.C. RAILROAD

 2021-NCSC-84

 Earls, J., dissenting

 all could be named specifically:

 Agency of North Carolina government or its subdivisions
 shall mean and include every public office, public officer or
 official (State or local, elected or appointed), institution,
 board, commission, bureau, council, department, authority
 or other unit of government of the State or of any county,
 unit, special district or other political subdivision of
 government.

 N.C.G.S. § 132-1 (emphasis added). If we were to place NCRR within the definition

 of “agency” within the statute, it would fit well within “institution” and certainly

 within the catchall of “other unit of government.”

¶ 63 In our consideration of the statues relevant to this case, we should “adopt an

 interpretation which will avoid absurd or bizarre consequences.” State ex rel. Com'r

 of Ins. v. N.C. Auto. Rate Admin. Office, 294 N.C. 60, 68, (1978). An interpretation

 that results in an entity created by the State for public benefit shielding its records

 from public scrutiny is an absurd one. Accordingly, I reject the necessary premise of

 the majority’s decision which says that the legislature, in enacting the 1975 Public

 Records Act, intended to permit the State or a related entity to hide from scrutiny

 merely by conducting its operations behind the corporate form.

¶ 64 The majority, as did the Business Court, makes much of a 2011 report from

 the General Assembly’s Program Evaluation Division (PED), which is “a staff agency

 of the General Assembly . . . [purposed to provide] an independent, objective source

 of information to be used in evaluating” the activities of state agencies or those of
 SELC V. N.C. RAILROAD

 2021-NCSC-84

 Earls, J., dissenting

 non-state entities conducted using state funds. N.C.G.S. § 120-36.11(a) (2019). In that

 2011 report, as was well-documented by both parties, the PED found that “[NCRR] is

 not subject to the State’s [Public Records Act].” Both parties rightly recognize that

 whether NCRR is subject to the Public Records Act, a question of law, is a

 determination to be made by this court, not by a staff agency of the General

 Assembly.2 The PED report, then, adds little to our analysis.

¶ 65 As the majority notes, in advance of the PED study of NCRR, the General

 Assembly passed legislation stipulating that “[f]or the purposes of [the] evaluation,

 the terms ‘State agency’ or ‘agency’ ” would include NCRR. An Act to Make Technical,

 Clarifying, and Other Modifications to the Current Operations and Capital

 Improvements Appropriations Act, S.L. 2011-391, § 52, 2011 N.C. Sess. Law No.

 1557, 1584–85. The majority claims that that “this language tends to suggest a

 recognition on the part of the General Assembly that [NCRR] was not a state agency,”

 but this does not follow in light of the issue before us. It seems instead that the

 legislature thought it necessary to define the NCRR as a “State agency” for the

 limited purpose of the evaluation. I believe the Public Records Act contemplates the

 same—that a corporate entity can be considered a state agency for some purposes,

 2 Whether the NCRR is subject to the Public Records Act, a narrow question of law, is

 also not a determination to be made by the Attorney General or the State Ethics Commission
 in their realms of authority, though the majority points to decisions by both as “persuasive”
 in support of its ruling.
 SELC V. N.C. RAILROAD

 2021-NCSC-84

 Earls, J., dissenting

 but not all.

¶ 66 The majority advances two further arguments by pointing to General

 Assembly activities in the wake of the PED report. Neither is availing. Both

 arguments focus on a 2013 statute imposing “additional reporting requirements,”

 N.C.G.S. § 124.17. In that legislative process, the General Assembly—equipped with

 the 2011 PED report which stated NCRR was not subject to the Public Records Act—

 “deci[ded] to adopt” the recommendations in the report, a decision the majority reads

 to mean the General Assembly “agreed with” the PED’s assessment of NCRR.

 However, it is just as likely that the General Assembly disagreed with the PED report

 and saw no need to act in light of it. In other words, the General Assembly did not

 bring NCRR within the auspices of the Act in 2013 because they believed NCRR to

 already be there. The PED is, after all, a staff agency of the General Assembly. It is

 unlikely that, faced with a report containing an inaccuracy from one of its staff

 agencies, the General Assembly would see a need to respond with legislation to

 correct the error.

¶ 67 The majority also points to the provisions of the 2013 statute that imposed

 those additional reporting requirements, arguing that such legislation would be

 superfluous if NCRR were already a state agency. This position defies the plain

 reading of the 2013 statute. The statute is indeed meant to provide for an “[e]nhanced

 annual report.” N.C.G.S. § 124-17 (emphasis added). NCRR is mandated to “submit
 SELC V. N.C. RAILROAD

 2021-NCSC-84

 Earls, J., dissenting

 an annual report to the Joint Legislative Commission of Governmental Operations

 and the Joint Legislative Transportation Oversight Committee.” N.C.G.S. § 124-

 17(a). In other words, the Public Records Act imposes no affirmative obligation on

 NCRR to produce a report or records—the 2013 statute does. An entity subject to the

 Public Records Act is only required to make some of its records made available on

 request. The 2013 statute, on the other hand, establishes an affirmative reporting

 requirement for NCRR to regularly provide information to certain state government

 entities. As a result, the reporting requirements of the 2013 statute say nothing about

 whether NCRR was already subject to the requirements of the Public Records Act.

¶ 68 The majority’s argument regarding the 2013 statute is called into further

 question by a comparison of the text of that statute to the text of the Public Records

 Act. The 2013 statute requires that NCRR, “[u]pon the request of the Governor or any

 committee of the General Assembly . . . provide all additional information and data

 within its possession or ascertainable from its records.” N.C.G.S. § 124-17(b)

 (emphasis added). The Public Records Act, however, only applies to information

 “made or received pursuant to law or ordinance in connection with the transaction of

 public business.” N.C.G.S. § 132-1(a). These obligations are not the same. The 2013

 statute compels NCRR to provide all information by request of the Governor or

 legislature; the Public Records Act makes available only information related to public

 businesses.
 SELC V. N.C. RAILROAD

 2021-NCSC-84

 Earls, J., dissenting

¶ 69 The majority attempts a similar line of reasoning with respect to the 2013

 statute’s provision allowing NCRR to “indicate whether the information [provided

 upon request of the Governor or General Assembly] is confidential.” N.C.G.S. § 124-

 17(b). Were NCRR subject to the Public Records Act, it might possess information

 that is not covered by the Act, but which would otherwise become subject to the Act

 upon fulfilling a request for information from the Governor of the General Assembly

 pursuant to Section 124-17(b). This provision, then, does not prove extraneous to the

 Public Records Act or any of NCRR’s obligations under it. Instead, it provides

 additional safeguards for the enhanced reporting requirements the legislature has

 chosen to impose on NCRR.

¶ 70 Ultimately, I am unpersuaded by the evidence cited by the majority for the

 proposition that NCRR should not be subject to the Public Records Act. Rather, I

 believe a more just and accurate reading of the legislature’s intent in passing the

 Public Records Act and in creating NCRR is that NCRR is subject to the Act.3

 III. Conclusion

 3 Whether the specific records sought by SELC are covered by the Act’s requirements

 is a separate question not before us here. However, there is no denying that the public has
 been impacted by NCRR’s decision to abandon a light rail project in the Triangle.
 Public/private partnerships for the public good are not new. It is equally still true that the
 public’s trust in government suffers when government decision-making is shielded from
 public view. “The generation that made the nation thought secrecy in government one of the
 instruments of Old World tyranny and committed itself to the principle that a democracy
 cannot function unless the people are permitted to know what their government is up to.”
 EPA v. Mink, 410 U.S. 73, 105 (1973) (Douglas, J. dissenting) (quoting Henry Steele
 Commager).
 SELC V. N.C. RAILROAD

 2021-NCSC-84

 Earls, J., dissenting

¶ 71 Subjecting NCRR to the Public Records Act would not grant the people of North

 Carolina unfettered access to NCRR’s records. As discussed, the Public Records Act

 only applies to records “made or received pursuant to law or ordinance in connection

 with the transaction of public business.” N.C.G.S. § 132-1(a). NCRR maintains the

 right to indicate that other information is confidential when it is “related to a

 proposed specific business transaction where inspection, examination, or copying of

 the records would frustrate the purpose for which the records were created.” N.C.G.S.

 § 124-17(b), (c). NCRR, then, would still be permitted to limit the public’s access to

 its records. But given the deeply intertwined relationship between NCRR and the

 State, those records which are sufficiently connected “with the transaction of public

 business” should be made available for public scrutiny.

¶ 72 I agree with the majority that our approach to interpreting statutes must

 always reckon with the “totality of the circumstances.” The circumstances to be

 considered here include both the scope and purpose of the Public Records Act and the

 legislation governing the NCRR’s activities. Because I believe the legislature’s intent

 was for the Public Records Act to make more, not less, of our government’s activities

 and operations available for public examination, and because I read our state’s prior

 appellate cases and the General Assembly’s actions as indicating that the North

 Carolina Railroad Company, owned fully by the State of North Carolina and obligated

 in several ways to its branches of government, should be subject to the Public Records
 SELC V. N.C. RAILROAD

 2021-NCSC-84

 Earls, J., dissenting

Act, I respectfully dissent.

 Justice HUDSON joins in this dissenting opinion.